William Robert MARTIN, Plaintiff,

v.

Buford H. PATE, Continental Investors Life Insurance Co., Inc., and American Lifestyles Protection and Security Trust a/k/a ALPS, Defendants.

Civ. A. No. CV–89–0363–B.

United States District Court,
S.D. Alabama, S.D.

Sept. 30, 1990.

J. Garrison Thompson, Pitts, Pitts & Thompson, Selma, Ala., for plaintiff.

Robert B. Roden, Roden & Hayes, P.C., Birmingham, Ala., Stephen L. Poer, Haskell, Slaughter & Young, Birmingham, Ala., for defendants.

## MEMORANDUM OPINION AND ORDER

BUTLER, District Judge.

### BACKGROUND

This action was initiated in the Circuit Court of Dallas County, Alabama, with plaintiff seeking recovery of benefits under an employee benefit plan and also asserting claims for bad faith refusal to pay and fraud. Because plaintiff claimed benefits under an "employee benefit plan" as defined in ERISA, 29 U.S.C. § 1002(3), defendants invoked the jurisdiction of this Court under ERISA, 29 U.S.C. § 1132, and removed the action pursuant to 28 U.S.C. § 1441. A nonjury trial was conducted on August 27, 1990.

### FINDINGS OF FACT

On September 30, 1986, plaintiff, William Robert Martin ("Martin"), underwent a heart catheterization which disclosed triple vessel coronary disease (partial blockage). Plaintiff was treated with medication which included procardia and nitroglycerin.

Some time prior to August 28, 1987, Martin, as secretary and treasurer for Martin Trucking, Inc., contacted Mr. Jay Woodruff, then the agent for Martin Trucking's benefits carrier, in an effort to obtain coverage at a lower premium. Although he was unable to assist Martin directly, Woodruff did provide the lead to defendant-Buford Pate ("Pate"), an independent agent maintaining contacts with several potential carriers. A meeting was arranged for August 28, 1987, between Martin and Pate which Woodruff also attended. At all relevant times Pate was acting as an agent for defendants Continental Investors Life Insurance Company ("Continental") and American Lifestyles Protection and Security Trust ("ALPS"). ALPS is underwritten and insured by Continental. The connection between Continental and ALPS is such that all references in this memorandum opinion and order to Continental shall be deemed to include ALPS.

Pate and Woodruff traveled together by car to the August 28 meeting. During the course of the trip Woodruff related to Pate that plaintiff had recently undergone a "check-up regarding his heart" for which there had been a $600 overpayment to the attending physician. The evidence is in dispute as to whether Woodruff told Pate the specifics of plaintiff's heart condition which necessitated the check-up; however, as will be seen below, a resolution of this dispute is not necessary to the determination of this action.

In applying for insurance with defendants Martin misrepresented his condition in two respects. First, Martin failed to disclose his condition to Pate at the August 28 meeting. Additionally, in completing the "Employee Information—Adoption Agreement and Application" form submitted to Continental, Martin responded in the *negative* to the question—"Are any employees or dependents known to have had a serious disease or disorder (i.e., diabetes, cancer, heart disease, etc.)?" Triple vessel coronary disease is clearly a "serious disease or disorder."

As a result of this application, a policy of group insurance providing medical expense benefits was issued by Continental to cover the employees of Martin Trucking, including plaintiff. In the period of February 10, 1988, to May 31, 1988, Martin incurred medical expenses in connection with heart bypass surgery in the amount of $39,254.20. The policy issued by Continental provided coverage for Martin's condition and was in effect at the time plaintiff in-

:curred these expenses. This action was initiated when defendants refused to pay plaintiff's claims. Defendants based their refusal on Martin's negative response to the question quoted above and failure to otherwise disclose his heart condition. Defendants viewed this conduct as fraud in the application justifying avoidance of the policy.

## APPLICABLE LAW

### 1. *The Claim for Benefits*

As already noted, a contract of insurance providing coverage for Martin's condition was in effect at the time plaintiff incurred the medical expenses for which he now seeks to recover. The defendants argue, however, that due to Martin's fraud in the application the policy may be rescinded under Ala.Code § 27–14–7 (1986).

■ Of course, generally speaking, federal substantive law, and not state law, governs a claim for benefits under ERISA. *See Peckham v. Board of Trustees*, 653 F.2d 424, 426 (10th Cir.1981). However, this Court is unaware of any provision of ERISA or federal decisional law addressing the specific issue under consideration.[1] Consequently, the Court will look to state law in order to reach a resolution.[2]

■ Under Alabama law "[t]he most innocent misrepresentation will afford a reason to rescind if the truth is either material to the risk or, even if immaterial, would have caused the particular insurer acting in good faith to have declined coverage." *Stephens v. Guardian Life Ins. Co.*, 742

F.2d 1329, 1333 (11th Cir.1984) (construing Ala.Code § 27–14–7 (1986)). Additionally, an intentional misrepresentation of material fact by an applicant for insurance which is relied upon by the insurer to its prejudice provides an adequate ground for avoidance of a policy. *Reliance Ins. Co. v. Substation Prods. Corp.*, 404 So.2d 598, 604 (Ala. 1981). There is no doubt in this Court's mind that plaintiff's representations regarding his condition were false, material to the risk, and had a bearing on Continental's issuance of the policy. Thus, at first blush, it appears that Continental was justified in refusing to pay plaintiff's claims.

■ However, Continental had no right to rely on plaintiff's misrepresentation. It is well settled that a policy cannot be avoided "if the insurer knows the true facts, or the falsity of the statements, or *has sufficient indications that would put a prudent person on notice so as to induce an inquiry* which, if done with reasonable thoroughness, would reveal the truth." *Bankers Life & Casualty Co. v. Long*, 345 So.2d 1321, 1323 (Ala.1977) (emphasis added); *Guardian Life*, 742 F.2d at 1333; *Substation Prods.*, 404 So.2d at 604. When Pate learned of plaintiff having recently received a heart check-up he had a "sufficient indication" that further inquiry was warranted. In addition, had Pate directed such inquiry towards Woodruff, Martin, or the attending physician, he could easily have ascertained plaintiff's heart condition. As a result of Pate's knowledge of Martin's heart check-up and his failure to conduct further inquiry, the element of

**1.** Obviously, this Court does not view the task presented in this case to be the review of a "benefits determination" as to eligibility or amount; rather, as will be seen below, the task at hand is the proper application of the doctrine of avoidance.

**2.** The application of Alabama's law of avoidance is proper in this case for either of two reasons. First, Ala.Code § 27–14–7 and the case law announced thereunder is plainly state "law ... which regulates insurance" and thus is excepted from ERISA preemption under 29 U.S.C. § 1144(b)(2)(A). The "deemer" clause of § 1144(b)(2)(B) does not alter this result. Additionally, even if § 27–14–7 were preempted, since there is no controlling federal authority

on the issue this Court is of the view that the widely recognized doctrine of avoidance for fraud in the application should be made part of the new federal common law being developed under ERISA and other regulatory schemes.

Although not for the reason this Court does so, at least one other court has looked to state law to resolve a claim for benefits under ERISA. *See HECI Exploration Co. v. Holloway*, 862 F.2d 513, 518–20 (5th Cir.1988) *aff'g* 76 B.R. 563 (N.D.Tex.1987) (state law applied where application of federal law waived by defendant). *See also Ellenburg v. Brockway, Inc.*, 763 F.2d 1091, 1097 (9th Cir.1985) (general principle of equity—the doctrine of unclean hands—applied so as to deny equitable relief provided for by ERISA).

reliance required for avoidance of the policy cannot be established.

■ "It is well recognized that the knowledge of an agent of an insurance company as to matters within the general scope of his authority is knowledge to the company." *Pacific Mutual Life Ins. Co. v. Edmonson*, 235 Ala. 365, 179 So. 185, 188–89 (1938). *See also Alabama Farm Bureau Mutual Casualty Ins. Co. v. Moore*, 435 So.2d 712, 714 (Ala.1983). These authorities make it clear that Pate's knowledge of plaintiff's heart check-up is imputed to Continental as a matter of law. Accordingly, this Court holds that plaintiff is entitled to recover $39,254.20 on his claim for benefits under the policy.

### 2. *The Bad Faith Claim*

■ Plaintiff is not entitled to recover on his bad faith claim because such claims are preempted by ERISA, 29 U.S.C. § 1144. Under § 1144, a state law claim is preempted if it "relate[s] to" an employee benefit plan. It appears well settled that claims for bad faith refusal to pay benefits are within ERISA's preemptive sweep. *See Belasco v. W.K.P. Wilson & Sons, Inc.*, 833 F.2d 277, 281 (11th Cir.1987) (citing *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987)). *See also Hood v. Prudential Ins. Co.*, 522 So.2d 265 (Ala.1988).

■ In addition, even assuming the preemption doctrine inapplicable, the denial of recovery under plaintiff's bad faith claim is still required. The evidence presented does not establish the absence of any legitimate or arguable reason for Continental's refusal to pay, or Continental's actual knowledge of the absence of an arguable reason. Under Alabama law these elements must be established to prevail on a bad faith claim. *See State Farm Fire & Casualty Co. v. Balmer*, 891 F.2d 874 (11th Cir. 1990); *Continental Elec. Co. v. American Employers' Ins. Co.*, 518 So.2d 83 (Ala.

1987), *cert. denied*, 486 U.S. 1023, 108 S.Ct. 1997, 100 L.Ed.2d 228 (1988).

### 3. *The Fraud Claim*

In "Count Three" of plaintiff's complaint it is alleged that defendants knew or should have known of plaintiff's pre-existing condition and that despite such knowledge defendants represented that the *"policy* [issued by Continental] would insure plaintiff for such pre-existing condition." When taken together with assertions made by plaintiff in the pretrial order it is apparent that count three constitutes a claim of fraud in the inducement to enroll in the plan.[3]

■ The question of whether claims of fraud in the inducement are preempted by ERISA is a difficult one, and this Court has taken notice of the division of authority it has caused. *Compare e.g., Farlow v. Union Central Life Ins. Co.*, 874 F.2d 791 (11th Cir.1989) (claim of fraud in the inducement held preempted) *with Perry v. P*I*E Nationwide, Inc.*, 872 F.2d 157 (6th Cir.1989) (claim of fraud in the inducement held not preempted), *cert. denied*, —— U.S. ——, 110 S.Ct. 1166, 107 L.Ed.2d 1068 (1990) *and HealthAmerica v. Menton*, 551 So.2d 235 (Ala.1989) (claim of fraud in the inducement held not preempted), *cert. denied*, —— U.S. ——, 110 S.Ct. 1166, 107 L.Ed.2d 1069 (1990).

In the oft-cited *Pilot Life* case, the Supreme Court determined that plaintiff's state law claims, which included one of "fraud in the inducement," related to the employee benefit plan where *"each [was] based on alleged improper processing of a claim for benefits* [and thus] undoubtedly [met] the criteria for pre-emption under [§ 1144]." *Pilot Life*, 481 U.S. at 48, 107 S.Ct. at 1553, 95 L.Ed.2d at 47–48 (emphasis added). This Court does not view Martin's fraud claim as based on improper processing of his claim for benefits and thus *Pilot Life* is not controlling. Rather, Martin's claim is that, at a time when he was

---

**3.** To the extent count three can be viewed as advancing a theory of estoppel, *i.e.,* that defendants should be estopped from asserting Martin's fraud in the application as a defense to his claim for benefits because they already "knew" of the condition he failed to disclose, that argument, in effect, was accepted in this Court's treatment of plaintiff's claim for benefits.

not a beneficiary under Continental's policy, he was induced by misrepresentations made by Pate and Continental concerning coverage under the policy to relinquish his previous coverage and enroll in Continental's plan.

Several lower courts have addressed the issue of preemption of fraud claims similar to that advanced by Martin. After a review of these authorities, this Court finds that the better reasoned and more persuasive position is that claims of fraud in the inducement to become a beneficiary under a plan are *not* preempted by ERISA.

As noted by the Supreme Court in *Pilot Life,* the intent behind ERISA's preemption provision was to "eliminat[e] the threat of conflicting or inconsistent state and local regulation of *employee benefit plans.*" *Id.* 481 U.S. at 46, 107 S.Ct. at 1552, 95 L.Ed.2d at 47 (quoting 120 Cong.Rec. 29933 (1974) (statement of Sen. Williams) (emphasis added)). It has also been stated that:

> [W]here the state law has only an indirect effect on the plan *and* where it is one of general application which pertains to an area of important state concern, the court should find there has been no pre-emption.

*Perry,* 872 F.2d at 161 (quoting *Provience v. Valley Clerks Trust Fund,* 509 F.Supp. 388, 391 (E.D.Cal.1981)).

Obviously, Alabama's fraud law is one of general application and alleged misrepresentations by insurance companies and their agents are surely an important state concern. Further, it is not apparent to this Court how the application of Alabama's fraud law to the instant case would give rise to conflicting regulation of *the employee benefit plan.* Indeed, it appears that as applied in the instant case Alabama's fraud law will not result in regulation *of the plan or its administration* at all. What will be regulated is conduct on the part of defendants engaged in prior to the time plaintiff became a beneficiary under the plan, *i.e.,* representations made to induce plaintiff to enroll under the plan.

In *Greenblatt v. Budd Co.,* 666 F.Supp. 735, 742 (E.D.Pa.1987) the Court noted "[t]hat the subject of the deception concerned pension benefits is only incidental and not essential to the plaintiff's cause of action" and went on to hold plaintiff's claim of fraud in the inducement not preempted. This Court agrees. The mere fact that the subject of an alleged misrepresentation concerns the coverage terms of a contract for insurance which once entered into will constitute an ERISA regulated plan does not render a state law fraud claim premised on such misrepresentation sufficiently "related to" *the benefit plan* to warrant preemption. Other courts have recognized that the relationship between such a fraud claim and the benefit plan is too peripheral or indirect to support a finding of preemption. *See Perkins v. Time Ins. Co.,* 898 F.2d 470, 473 (5th Cir.1990) (in holding claim of fraud in the inducement not preempted the court "conclude[d] that a claim that an insurance agent fraudulently induced an insured to surrender coverage under an existing policy, to participate in an ERISA plan which did not provide the promised coverage, 'relates to' that plan only indirectly"); *Miller v. Lay Trucking Co.,* 606 F.Supp. 1326, 1332 (N.D.Ind.1985) ("alleged fraudulent activities by defendants [which] took place prior to any contract being entered into ... do not directly affect the regulation of the ERISA plan" and thus state law claims premised on such activity are not preempted).

In short, this Court finds that the application of Alabama's fraud law in the instant case, if at all, "affects [the] employee benefit plan[ ] in too tenuous, remote, or peripheral manner to warrant a finding that the law 'relates to' the plan." *Shaw v. Delta Airlines, Inc.,* 463 U.S. 85, 100 n. 21, 103 S.Ct. 2890, 2901 n. 21, 77 L.Ed.2d 490 (1983).

This Court is cognizant of the Eleventh Circuit's decision in *Farlow,* 874 F.2d 791, in which a claim of fraud in the inducement quite similar to that in the instant case was held preempted. In light of the reasoning and persuasiveness of the authorities discussed above the applicability of *Farlow* to the facts of this case appears questionable. In *Farlow* the court held:

[A] state law cause of action 'relates to' an employee benefit plan if the employer's conduct giving rise to such a claim was not 'wholly remote in content' from the benefit plan. *Clark*, 865 F.2d at 1243. A claim does not however, relate to a plan even though the employer's conduct occurred contemporaneously with an alleged ERISA violation, unless the facts relating the employee's failure to receive benefits are relevant to the state law claim. *Clark*, 865 F.2d at 1245.

*Farlow*, 874 F.2d at 794.

However, a close reading of *Clark* reveals that the court actually held that a state law claim is not preempted where it alleges "conduct which was proximate (or even concurrent) in time *to the alleged ERISA violation*, but wholly remote in *content*." *Clark v. Coats & Clark, Inc.*, 865 F.2d 1237, 1243 (11th Cir.1989) (emphasis modified). Applying *Clark* to the case at bar, this Court views the conduct giving rise to Martin's fraud claim, *i.e.*, the alleged misrepresentations by defendants regarding coverage under the policy and the alleged ERISA violation, *i.e.*, failing to pay benefits due to be paid, as wholly remote in content and thus the fraud claim is not preempted.

Further, even if this Court applies *Farlow* to the letter, Martin's fraud claim is not preempted. As already noted, the *Farlow* court held that a state law claim does not relate to a plan "unless the facts relating to the employee's failure to receive benefits are relevant to the state law claim." *Farlow*, 874 F.2d at 794.[4] Here, the fact relating to Martin's failure to receive benefits was that he failed to disclose his pre-existing disease in the application submitted to Continental who subsequently and erroneously relied on that fact to attempt to avoid the policy. There is no link of relevancy between Martin's misrepresentation in the application and his claim that defendants misrepresented the coverage provided under the policy. Thus, even un-

der the *Farlow* court's formulation plaintiff's fraud claim is not preempted.

Having found plaintiff's fraud claim not preempted, this Court must proceed to the merits of the claim. Taking plaintiff's allegations and evidence at face value, this Court finds that no fraud was committed by defendants because no false representations were made. There is simply no evidence that *the policy* issued by Continental did not provide coverage against the expenses incurred as a result of plaintiff's pre-existing condition or that benefits were denied under the pre-existing condition limitations provisions of the policy. In fact, plaintiff's heart condition was covered under the policy because, as a result of Martin's condition having been covered under the policy "taken over" by Continental's policy, the pre-existing condition limitations, by their own terms, were not in operation. Again, plaintiff failed to receive benefits because Continental sought to use Martin's negative response to the question concerning serious diseases or disorders as a basis for avoiding the policy altogether. There being no evidence of any false representations made on the part of defendants, plaintiff's fraud claim must fail.

### ORDER

Based on the foregoing, it is ORDERED, ADJUDGED and DECREED that plaintiff—William Robert Martin shall recover under his claim for benefits the sum of $39,254.20 plus prejudgment interest at the rate six (6) percent per annum from defendants Continental Investors Life Insurance Company and American Lifestyle Protection and Security Trust. It is further ORDERED, ADJUDGED and DECREED that plaintiff shall not recover on his bad faith or fraud claims. No attorneys' fees or costs are assessed in this matter.

---

**4.** The *Farlow* court cites *Clark*, 865 F.2d at 1245, in support of this proposition. Although this Court fails to see how this statement of law is derived from *Clark*, it will endeavor to apply the proposition to the case at hand.