Jerri Lynn **HENSLEY**, et al., Plaintiffs,

v.

**PHILADELPHIA LIFE INSURANCE COMPANY**, et al., Defendants.

Civ. A. No. 95–AR–0148–E.

United States District Court,
N.D. Alabama,
Eastern Division.

March 10, 1995.

Marcel L. Debruge, Peter H. Burke, Cooper Mitch Crawford Kuykendall & Whatley, Birmingham, AL, for Jerri Lynn Hensley, Larry Hensley, Riteway Beauty Supply, Inc.

Ollie L. Blan, Jr., Thomas M. Eden, III, Spain Gillon Grooms Blan & Nettles, Birmingham, AL, for Philadelphia Life Ins. Co.

Terry McElheny, J. Fred Wood, Jr., Dominick Fletcher Yeilding Wood & Lloyd, Ollie L. Blan, Jr., Thomas M. Eden, III, Spain Gillon Grooms Blan & Nettles, Birmingham, AL, for Linda Baird.

### MEMORANDUM OPINION

ACKER, District Judge.

Plaintiffs, Jerri Lynn Hensley, Larry Hensley and Riteway Beauty Supply, Inc., have presented an amended motion to remand their above-entitled case to the Circuit Court of Calhoun County, Alabama, from whence it was removed by defendants, Philadelphia Life Insurance Company and Linda Baird, based on defendants' allegation that the complaint is "related to" an "employee benefit plan" and is therefore preempted by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 *et seq.*, even though plaintiffs did not invoke ERISA in the state court, instead relying exclusively upon facially non-federal causes of action, in particular, allegations of state law fraud committed by defendants during the sale of insurance. Defendants predictably accompanied their notice of removal with motions reminiscent of *La Buhn v. Bulkmatic Transp. Co.*, 644 F.Supp. 942, 948 (N.D.Ill.1986), *affd.*, 865 F.2d 119 (7th Cir. 1988), in which that court said:

> As is typical of these preemption cases, a removing defendants tows the case into the federal harbor only to try to sink it once it is in port.

On February 8, 1995, this court entered an order requiring Philadelphia Life to differentiate between the relief to which plaintiffs would be entitled (assuming that this is an ERISA plan and that plaintiffs' factual allegations are true) under ERISA's express terms, and the relief, if any, to which plaintiffs would be entitled under the federal common law of ERISA. The court further required Philadelphia Life to submit a draft complaint by which plaintiffs, on the same assumptions, could obtain such relief. This order was prompted by the thoughts expressed by this court in *Fleming v. Life of the South TPA, Inc.*, 868 F.Supp. 1347 (N.D.Ala.1994). Philadelphia Life's attempt to comply with the court's said order only serves to emphasize defendants' intent to sink plaintiffs' ship in the federal harbor.

The parties are well aware of this court's constant and consistent insistence that the availability of ERISA's super-preemption as a basis for federal question jurisdiction pursuant to 28 U.S.C. §§ 1441(b) and 1331 cannot be triggered simply by calling a particular insurance policy an ERISA plan and alleging that the plaintiff's claim relates to it. A few examples will illustrate this court's well-advertised point of view.

In *Jordan v. Reliable Life Ins. Co.*, 694 F.Supp. 822 (N.D.Ala.1988), this court said:

> From the information here furnished by Reliable, Vulcan Materials Company, Mr.

Jordan's employer, was both the "plan administrator" and the "plan sponsor," except that Reliable has not produced the written instrument required by 29 U.S.C. § 1102 for the creation of an "employee benefit plan." It is impossible to tell from the record in this case whether or not the subject insurance policy is even a part of an "employee welfare benefit plan," particularly when the "Accident Insurance Plan for Salaried Employees" attached to the complaint does not contain the requisites set out in 29 U.S.C. § 1102. For instance, the document does not "provide for one or more named fiduciaries who jointly or severally shall have authority to control and manage the operation and administration of the plan." For instance, the document does not "provide a procedure for establishing and carrying out a funding policy and method consistent with the objectives of the plan." For instance, the document does not "describe any procedure under the plan for the allocation of responsibilities for the operation and administration of the plan." For instance, the document does not "provide a procedure for amending such plan and for identifying the persons who have authority to amend the plan." For instance, the document does not "specify the basis on which payments are to be made to and from the plan." The document only constitutes the usual and customary form of a group policy of accident insurance.

*Id.* at 833–34.

In *Wright v. Sterling Investors Life Ins. Co.*, 747 F.Supp. 653 (N.D.Ala.1990), *mandamus denied*, No. 90–7678, slip op. (11th Cir. Oct. 11, 1990), this court said:

Assuming *arguendo* that the Eleventh Circuit is among those courts which recognize federal preemption as a substitute for federal jurisdiction, it is nevertheless incumbent on the removing party to allege facts to demonstrate the actual preemption, i.e., in this case the actual existence of an ERISA-related claim. If the well-pleaded complaint rule can be circumvented by a defendant so as to obtain removal in this context, at least that defendant must supply allegations of *facts* in his removal papers to indicate the existence of a federal preemption. No such facts are averred in this notice of removal. For instance, there is no averment that the policy of insurance was a part of an "employee welfare benefit plan," as required by 29 U.S.C. §§ 1002(1); or that the plan of which the policy is a part is established or maintained by: (i) an employer engaged in commerce or activity affecting commerce; (ii) an employee organization or organizations representing employees engaged in commerce or in an activity affecting commerce, as required by 29 U.S.C. § 1003. The court finds it strange that defendants cite in their brief *Donovan v. Dillingham*, 688 F.2d 1367, 1370 (11th Cir. 1982), for the proposition that ERISA cases are removable. The brief acknowledges that there are "five requirements which must be met in order to show the existence of an 'employee benefit plan' within the meaning of ERISA." The five *Donovan* requirements are even listed by defendants. Defendants' brief, p. 3. However, defendants admitted that "*each of these factors can be gleaned from the facts of the complaint.*" (emphasis supplied). Defendants' brief, p. 3. This is not true of the Wrights' complaint. Neither is it true of the removal papers filed by these defendants.

*Id.* at 655.

In *Bryant v. Blue Cross and Blue Shield*, 751 F.Supp. 968 (N.D.Ala.1990), this court said:

The notice of removal contains no allegation of *fact*, verified or otherwise, to reflect that the previous policy or the substitute policy issued by Blue Cross is governed by ERISA. As already pointed out, defendant's original allegation of ERISA governance takes the form of a bare legal conclusion. Only after plaintiff filed his motion to remand did Blue Cross file an affidavit with attachments which, for the first time, provides evidence arguably indicating that the Blue Cross contract for group health benefits constitutes an ERISA "plan". *Inter alia*, this affidavit asserts that all premiums for the Blue Cross coverage were paid by the employer,

Byrd Construction. However, there are a number of unexplored factual matters which bear on whether or not ERISA actually applies to this controversy. A removal based on the existence of a federal question must allege all facts essential to the existence of that federal question. The existence of a federal question cannot be left to mere speculation.

\* \* \* \* \* \*

In other words, even if Blue Cross' post-removal affidavit can be considered by the court, Blue Cross has not adequately demonstrated a factual basis for ERISA application. It still leaves crucial "i's" undotted and "t's" uncrossed.

*Id.* at 969.

In *Mitchell v. Investors Guar. Life Ins. Co.*, 868 F.Supp. 1344 (N.D.Ala.1994), this court said:

As this court has stated on previous occasions, the entrance to federal court does not swing wide, like Ali Baba's cave, at the mere invocation: "this is an ERISA plan." *See e.g. Bryant v. Blue Cross and Blue Shield of Alabama,* 751 F.Supp. 968 (N.D.Ala.1990); *Jordan v. Reliable Life Ins. Co.,* 694 F.Supp. 822, 824–25 (N.D.Ala. 1988). Rather, a removing defendant must set forth with considerable specificity the necessary elements of an ERISA plan. Considering the profound preemptive effect of ERISA on both state courts and state law, federalism demands that federal courts apply super-preemption with care and thoughtful deliberation. This court is not among the courts that have been overly generous by construing bare conclusory allegations to prove the existence of an ERISA plan. *See Wickman v. Northwestern Nat. Ins. Co.,* 908 F.2d 1077 (1st Cir.), *cert. denied,* 498 U.S. 1013, 111 S.Ct. 581, 112 L.Ed.2d 586 (1990).

*Id.* at 1346.

The Eleventh Circuit joins this court in requiring more than wishful thinking for the creation of an ERISA plan. In *Donovan v. Dillingham,* 688 F.2d 1367 (11th Cir.1982), while holding that ERISA does not "require a formal, written plan," the Eleventh Circuit

proceeded to lecture the Secretary of Labor as follows:

The Secretary contends that "establish" means no more than an ultimate decision by an employer or an employee organization to provide the type of benefits described in ERISA § 3(1), 29 U.S.C. § 1002(1). This sweeps too broadly. A decision to extend benefits is not the establishment of a plan or program. Acts or events that record, exemplify or implement the decision will be direct or circumstantial evidence that the decision has become reality—e.g., financing or arranging to finance or fund the intended benefits, establishing a procedure for disbursing benefits, assuring employees that the plan or program exists—but it is the reality of a plan, fund or program and not the decision to extend certain benefits that is determinative.

In determining whether a plan, fund or program (pursuant to a writing or not) *is a reality* a court must determine whether from the surrounding circumstances a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits. Some essentials of a plan, fund, or program can be adopted, explicitly or implicitly, from sources outside the plan, fund, or program—e.g., an insurance company's procedure for processing claims, *cf.* 29 C.F.R. § 2520.–102–5 (qualified health maintenance organization)—but no single act in itself necessarily constitutes the establishment of the plan, fund, or program. For example, the purchase of insurance does not conclusively establish a plan, fund, or program, but the purchase is evidence of the establishment of a plan, fund, or program; the purchase of a group policy or multiple policies covering a class of employees offers substantial evidence that a plan, fund, or program has been established.[11]

In summary, a "plan, fund, or program" under ERISA is established if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits. To be an *employee* welfare benefit plan, the intended benefits must be health,

accident, death, disability, unemployment or vacation benefits, apprenticeship or other training programs, day care centers, scholarship funds, prepaid legal services or severance benefits; the intended beneficiaries must include union members, employees, former employees or their beneficiaries; and an employer or employee organization, or both, and not individual employees or entrepreneurial businesses, must establish or maintain the plan, fund, or program.

11. Department of Labor regulations recognize that an employer may be involved in a plan, fund, or program without establishing or maintaining it. *See* 29 C.F.R. § 2510.3–1(j). According to the regulation the term "employee welfare benefit plan" does not include group insurance if the sole functions of the employer are, without endorsing the program, to permit an insurer to publicize a program to employees, to collect premiums through payroll deductions, and to remit the premiums to the insurer, and the employer does not contribute premiums to the insurer or make a profit from the program. *See also Hamberlin v. VIP Insurance Trust,* 434 F.Supp. 1196 (D.Ariz.1977) (policies sold directly to individual employees; employers had no voice in management and contributed no funds).

*Id.* at 1372–73 (emphasis supplied).

The Eleventh Circuit could no longer hold that an ERISA plan can be oral. As recently as March 6, 1995, the Supreme Court in *Curtiss–Wright Corp. v. Schoonejongen,* — U.S. —, 115 S.Ct. 1223, 131 L.Ed.2d 94 (1995), in a unanimous opinion, held:

> ERISA already has an elaborate scheme in place for enabling beneficiaries to learn their rights and obligations at any time, a scheme that is built around reliance *on the face of written plan documents.*
>
> The basis of that scheme is another of ERISA's core functional requirements, that "*[e]very employee benefit plan shall be established and maintained pursuant to a written instrument.*" § 1102(a)(1) (emphasis added). In the words of the key congressional report, "*[a] written plan* is to be required in order that every employee may, on examining the plan documents, determine exactly what his rights and obligations are under the plan." H.R.Rep. No. 93–1280, p. 297 (1974) (emphasis added). ERISA gives effect to *this "written plan documents"* scheme through a com-

prehensive set of "reporting and "disclosure" requirements, see 29 U.S.C. §§ 1021–1031, of which § 402(b)(3) is not part. One provision, for example, requires that plan administrators periodically furnish beneficiaries with a *Summary Plan Description,* see § 1024(b)(1), the purpose being to communicate to beneficiaries the essential information about the plan. Not surprisingly, the information that every SPD must contain includes the "name and address" of plan administrators and other plan fiduciaries....

> \*   \*   \*   \*   \*   \*

> Under ERISA, both Summary Plan Descriptions and plan amendment summaries "*shall be written* in a manner calculated to be understood by the average plan participant." § 1022(a)(1) (emphasis supplied).

*Id.* at — – —, 115 S.Ct. at 1230–31.

Where to draw the line as to what it takes to allege the essentials of a real, viable ERISA plan may not be easy, but it is easy for this court to say that the papers here submitted by defendants do not meet the standards for proving the existence of an ERISA plan.

The earlier eagerness of the federal courts to accept the prevailing assumption that every employer-connected insurance policy, whatever the surrounding circumstances, constitutes an ERISA plan for super-preemption purposes, has fast begun to fade. It virtually disappears in *Schoonejongen, supra.* This new reluctance to accept blindly all removals by employers or insurers based on the purported invocation of ERISA's super-preemption is well illustrated closer to home by *Jones v. Pioneer Life Ins. Co.,* 858 F.Supp. 164 (M.D.Ala.1994), wherein that court carefully explained what it takes to allege and to prove the existence of an ERISA-governed plan. It said:

> Jones filed a motion to remand, asserting the federal court had no jurisdiction because the insurance plan at issue was not governed by ERISA. This court finds that the plan is not an ERISA plan. Thus, this case is due to be remanded to the Circuit Court of Barbour County, Alabama.

Jones entered into a health insurance policy with Pioneer in April 1991. Jones was working at Doti's Body Shop ("Doti's"). At the time Doti's was a sole proprietorship, owned by Elijah Massey, Jones's uncle. Massey obtained health insurance from a Pioneer representative for himself and his daughter. When Jones told Massey he wanted to get health insurance, and that he had known a Pioneer agent had come to Doti's and sold Massey some insurance, Massey gave Jones the Pioneer agent's card. Jones called Pioneer, and an agent came to Doti's to sell Jones some insurance.

Pioneer required that the premiums on the policy be paid by a bank draft. Jones did not have a checking account. Jones worked out the following arrangement, involving Doti, for the payment of the premiums to Pioneer: Massey authorized Pioneer to draft the bank account of Doti's Garage for the payment of the monthly premiums. Massey paid Jones his monthly salary. In return Jones would pay his monthly premium by the end of the month, which is when Pioneer Life deducted the premium from Doti's account. Massey was reimbursed in full for the payment he made. Thus, Massey was not making any contribution toward the payment of the premium.

Whether a plan falls within ERISA's scope depends on whether the insurance policy qualifies as an "employee benefit plan" for ERISA purposes. *Randol v. Mid–West Nat'l Life Ins. Co. of Tennessee,* 987 F.2d 1547, 1549 (11th Cir.1993). An "employee benefit plan" includes an "employee welfare benefit plan," 29 U.S.C. § 1002(3). An "employee welfare benefit plan" is

> any plan, fund, or program ... established or maintained by an employer ... to the extent such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, ... medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment....

29 U.S.C. § 1002(1). The U.S. Department of Labor, under authority to promulgate rules interpreting ERISA, *see* 29 U.S.C. § 1135, has issued regulations providing that certain plans are excluded from ERISA's coverage. 29 C.F.R. § 2510.3–1(j) provides:

> *Certain group or group-type insurance programs.*
>
> For purposes of title I of the Act and this chapter, the terms "employee welfare benefit plan" and "welfare plan" shall not include a group or group-type insurance program offered by an insurer to employees or members of an employee organization, under which
>
> (1) No contributions are made by an employer or employee organization;
>
> (2) Participation [in] the program is completely voluntary for employees or members;
>
> (3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and
>
> (4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

Each of these four requirements must be met in order for the plan to be excepted from ERISA's scope.

Pioneer contends the first requirement is not met because Massey can be viewed as having made certain contributions: the premium payments were paid out of Doti's bank account. The cash reimbursements by Jones were placed into Massey's account, rather than Doti's account. Pioneer says that it is possible that Massey did not replace any payments made out of Doti's account back into Doti's account, which would indicate that Doti's made at least

some contributions toward the payment of the premiums under/for the policy. Pioneer overlooks the fact that Doti's is a sole proprietorship; thus, Doti's and Massey are not separate entities. Massey, the employer, advanced the money for the premiums, and in return was reimbursed in full. He cannot be viewed as having made a contribution.

Pioneer does not dispute that the second requirement has been met. Pioneer contends the third requirement has not been met because Massey endorsed the insurance plan Jones obtained from Pioneer. This court finds that Massey did not endorse the insurance program. Massey merely told Jones the name of the agent from whom he purchased his own health insurance, and gave Jones Pioneer's agent's card, upon Jones inquiring about it. An employer has not established an ERISA plan if he merely advertises a group insurance plan that has none of the attributes described in 29 C.F.R. § 2510.3–1(j). *Fugarino v. Hartford Life and Accident Ins. Co.*, 969 F.2d 178 (6th Cir.1992); *see also Wickman v. Northwestern Nat'l Ins. Co.*, 908 F.2d 1077, 1083 (1st Cir.1990); *Credit Managers Ass'n of Southern California v. Kennesaw Life & Accident Ins. Co.*, 809 F.2d 617, 625 (9th Cir.1987).

Pioneer further maintains that the third requirement is not met because Massey did not collect premiums through a payroll deduction or dues checkoff; Jones was paid his full salary and Massey was reimbursed later in cash. This court does not find fatal to meeting the 29 C.F.R. § 2510.3–1(j) exception that a payroll deduction was not taken from Jones's paycheck before he was paid his salary. The methodology used by Massey had the same effect as a payroll deduction. According to the Department of Labor, "employer neutrality is the key to the rationale for not treating such a program [which meets all requirements of 29 C.F.R. § 2510.3–1(j) ] as an employee benefit plan, namely the absence of employer involvement." 40 Fed.Reg. 34,526 (1975). "The purpose of these requirements is to be sure there is no employer involvement in the management or design of the program. Because

of this absence of involvement, the Department of Labor determined that there is no purpose served by imposing ERISA requirements on an employer through whose employment the program is offered." Ellen A. Hennessy, *Welfare Plans in Corporate Transactions*, 263 PLI/Tax 375 (1987). The payroll deduction taken by the employer ensures minimal employer employment. The method of payment here did not involve greater employer involvement. This court finds that this method of the employer obtaining reimbursement is equivalent to the employer obtaining his/her reimbursement via a payroll deduction. To literally require a payroll deduction or dues checkoff even when the same thing is accomplished by the method used here would be an unjustified hyper-technical application of form over substance.

The fourth requirement is met; Massey received no consideration in connection with the policy. Although cash payments were received by Massey, these were mere reimbursements of the funds advanced by Massey, and did not constitute consideration to Massey for his allowing use of Doti's account for payment of the premiums.

Each of the four criteria of the safe harbor of 29 C.F.R. § 2510.3–1(j) has been met. This court finds that the policy at issue does not come within the scope of ERISA. Thus, this court is without jurisdiction to hear the case.

*Id.* at 165–66.

Not without consequence to the instant case, in which the complaint sounds in fraud *ab initio*, is *Martin v. Pate*, 749 F.Supp. 242 (S.D.Ala.1990), *affd.* 934 F.2d 1265 (11th Cir. 1991), where the district court spoke to the question of ERISA preemption where alleged misrepresentations had taken place at the time of the policy's issuance, both on the part of the *insured* and on the part of the *insurer.* The court there found the Alabama defense interposed by the insurer not to be preempted and allowed it to be considered as a basis for possible rescission. It would constitute an anomaly that might reach "equal protection" proportions if a court should allow an insurance company to avoid coverage

under what may be an ERISA plan because of the *insured's* misrepresentation by applying Alabama law, while at the same time denying the insured any right to complain of the *insurer's* fraud during the conduct of the sale. The court in *Martin,* whether or not recognizing this anomaly, held, tit-for-tat, that the application of Alabama's fraud laws to the insured's claim of fraud against the insurer was *not* preempted, using the following language:

> [T]his Court views the conduct giving rise to Martin's fraud claim, *i.e.,* the alleged misrepresentations by defendants regarding coverage under the policy and the alleged ERISA violation, *i.e.,* failing to pay benefits due to be paid, as wholly remote in content and thus the fraud claim is not preempted.

*Id.* at 247.

The foregoing analysis, both by this court and by other courts, including the Supreme Court, stands in the way of this removal by Philadelphia Life and Baird and provides a perfect example of why the "Proposed Long–Range Plan for the Federal Courts," published in November, 1994, by the Committee on Long–Range Planning of the Judicial Conference of the United States, contains the following recommendation:

> The concurrent jurisdiction of the federal courts to adjudicate routine claims for benefits under ERISA employee welfare plan should be abolished.

> Any new cooperative federal-state program to establish national standards for employee benefits (e.g., health care), should designate state courts as the primary forum for the review of benefit denial claims.

*Id.* at 29. This sounds mightily like Judge Birch's dissent in *Sanson v. General Motors Corp.,* 966 F.2d 618 (11th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1578, 123 L.Ed.2d 146 (1993), wherein Judge Birch said:

> At the outset I must acknowledge that the direction of decision in the courts, particularly in the wake of *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990), favors a finding of preemption. However, given the acknowledged, underlying purpose of ERISA to protect employees and beneficiaries in employee benefit plans, this case represents the point at which the preemption tide should be stayed. A finding of preemption in this case not only fails to further any such protective policy, it conceivably offers an unscrupulous employer a method of avoiding employee benefit "burdens." An employer in this circuit can now hoodwink a long time employee and leave him stranded without any recourse whatsoever. This result stands the entire statutory scheme on its proverbial head.

*Id.* at 623 (citation omitted).

Perhaps anticipating a broad retreat from absolute federal exclusivity for simple insurance fraud claims, the Eleventh Circuit in *Lordmann Enters., Inc. v. Equicor, Inc.,* 32 F.3d 1529 (11th Cir.1994), recently allowed a misrepresentation claim by a health care provider (as distinguished from a direct beneficiary), brought under Georgia law, to proceed in the state court because the claim too tenuously affected the ERISA plan. Using this rationale, *Florence Nightingale Nursing Serv., Inc. v. Blue Cross/Blue Shield,* 41 F.3d 1476 (11th Cir.1995), involving an admitted ERISA plan, could have been brought by the provider in a state court and remained there.

### Conclusion

The long and the short of it is that the removing defendants here have failed to allege, much less to prove, the requisites of a qualified ERISA plan. As in *Pioneer Life, supra,* the absence of certain facts place what amount simply to "key person" policies of insurance in the "safe harbor" provided by 29 C.F.R. § 2510.3–1(j) rather than in the preemption harbor especially designed for scuttling. As the court said in *Lackey v. Whitehall Corp.,* 704 F.Supp. 201 (D.Kan. 1988), *amended,* No. 85–2639–S, 1989 WL 21008 (D.Kan. Feb. 23, 1989), no ERISA plan can be created when "[t]here are no plan documents, no funding accounts, no named fiduciaries or trustees, and no assets held in trust." *Id.* at 205. Even if an ERISA plan could be created orally, it nevertheless must

contain the essential ERISA elements, and this one falls far short of doing so.

Because the case will be remanded to the state court for lack of subject matter jurisdiction, the court will not address the ground of plaintiffs' motion to remand based upon the admitted failure of the defendants to attach Baird's summons to the removal papers within the thirty (30) day time period for removal as required by 28 U.S.C. § 1446(a).