Robert W. HARPER, et al., Plaintiffs,

v.

OCCIDENTAL PETROLEUM SERVICES, INC., et al., Defendants.

No. 1:94–CV–369.

United States District Court, E.D. Tennessee.

Jan. 17, 1996.

Charles P. Dupree, Chattanooga, TN, for plaintiffs.

Gary David Lander, Chambliss & Bahner, Chattanooga, TN, Robert N. Price, Oxy USA Inc., Tulsa, OK, for defendants.

## MEMORANDUM

COLLIER, District Judge.

This Court has before it the defendants' (Occidental Petroleum Services, Oxy USA Inc. and Cities Service Company) motion for summary judgment brought pursuant to Rule 56 of the Federal Rules of Civil Procedure (Court File No. 4). The defendants filed this motion in response to plaintiffs' claims of breach of contract by the defendants concerning the plaintiffs' retirement benefits. The plaintiffs assert this Court has jurisdiction to address the breach of contract claims based on the diversity of citizenship of the parties in this action, 29 U.S.C. § 1332. In addition, the plaintiffs have filed a motion to certify class action (Court File No. 14) which the defendants oppose. For the following reasons, the Court will **GRANT** the defendants' motion for summary judgment and **DENY** the plaintiff's motion to certify class action.

## I. FACTUAL BACKGROUND

The relevant facts are as follows. Plaintiffs Robert W. Harper, Fred A. Thomas and Thomas D. Seabolt were all employed by Cities Service Company. Mr. Harper began his employment with Cities Service Company on May 2, 1960 (Court File No. 6, Exh. K, corporate retirement system form); Mr. Thomas began on January 9, 1961 (Court File No. 6, Exh. L, corporate retirement system form); and Mr. Seabolt initiated his employment with Cities Service on November 9, 1959 (Court File No. 6, Exh. M, corporate retirement system form). Plaintiffs Harper and Thomas were hired as hourly employees of Cities Services Company while plaintiff Seabolt was a salaried employee (Court File No. 6, affidavit of Andrew Pierson). As such employees, the plaintiffs were covered by certain pension plans provided by Cities Services Company (Court File No. 6). Mr. Harper and Mr. Thomas were members of Plan 008, the plan designed to cover benefits for hourly employees, and Mr. Seabolt, as a salaried employee of Cities Services Company was a member of Plans 012 and 017 (Court File No. 6). Plans 008 and 012 indicated member employees would be eligible for early retirement benefits if they met both of the following criteria: (1) the completion of ten years of vesting-credit service with Cities Services Company, and (2) the attainment of the age of 55 (Court File No. 6, Exhs. C at p. 11 and D at p. 9). However, Plan 017 provided an employee could receive early retirement benefits upon attaining age 55 without having completed the ten years of service required by Plans 008 and 012 (Court File No. 6, Exh. E at p. 21).

On July 22, 1982, Cities Services Company sold certain assets to Tennessee Chemical Company pursuant to the terms of an Asset Purchase Agreement (Court File No. 6). The plaintiffs argue the terms and benefits of the pension plans of Cities Services Company's employees were established at the time of the sale and the only question regarding these was who would be primarily responsible for the payment of the retirement benefits (Court File No. 10). In the eyes of the plaintiffs, Cities Services Company stood as the contractual guarantor of those benefits and promised to pay such benefits in their full amount if not paid by Tennessee Chemical (Court File No. 10). The defendants, on the other hand, assert Cities Services Company did not assume any responsibility for retirement plans established by Tennessee Chemical (Court File No. 6, affidavit of Andrew Pierson; Court File No. 6, Exh. A). This transaction was closed on September 22, 1982 and, according to the record, as a result

of the purchase agreement, the plaintiffs' employment with Cities Services Company was terminated and subsequently began with Tennessee Chemical Company in September of 1982 (Court File No. 6). In September of 1982, none of the plaintiffs had reached the age of 55 (Court File No. 6, Exhs. K, L, M, corporate retirement system forms and plaintiffs' birth certificates; Court File No. 6, affidavit of Andrew Pierson).

According to the plaintiffs, some years after the sale, Tennessee Chemical Company filed for bankruptcy. The bankruptcy trustee sold the balance of Tennessee Chemical's operation, excluding the assets and obligations of its pension plans, to a company called Boliden (Court File No. 10). Tennessee Chemical Company was then granted a complete discharge in bankruptcy and dissolved as an entity (Court File No. 10). The management of Tennessee Chemical's plans and the assets of the plans were transferred to the Pension Benefit Guarantee Corporation (PBGC), a governmental agency which guarantees the minimum payments and conditions to pension plan members as set out by congressional mandate (Court File No. 10). The PBGC has decided it is not required by law to fund or follow the benefit plan the plaintiffs allege were set out in the Purchase Agreement between Cities Services and Tennessee Chemical (Court File No. 10).

Occidental Petroleum Company acquired Cities Services Company in December of 1982 (Court File No. 6, affidavit of Andrew Pierson). In 1983, Cities Services Company ceased being an operating company (Court File No. 6). The defendants assert responsibility for the administration of certain employee benefit plans, including the three retirement plans established by Cities Services Company became the responsibility of defendant Oxy USA Inc. (Court File No. 6). On or about July 28, 1983, a letter, relative to the Purchase Agreement between Cities Services and Tennessee Chemical, was sent out describing certain changes to Plan 008 (Court File No. 6, Exh. F). This letter reiterated the conditions for early retirement established by Plan 008; however, it notified former hourly employees of Cities Services Company that those who became eligible to retire during continuous employment with Tennessee Chemical Company on or before April 1, 1986 and actually retired from Tennessee Chemical before or after April 1, 1986 would be entitled to an amount equal to an early retirement benefit under the plan (Court File No. 6, Exh. F). Letters were also sent out describing changes in Plans 012 and 017 at about the same time (Court File No. 6, Exhs. G, H). In October of 1983, with the approval of the Internal Revenue Service and the Pension Benefit Guaranty Corporation, Occidental Petroleum Services terminated Plans 008, 012, and 017 (Court File No. 6). However, Occidental Petroleum purchased annuities to pay, when due, all of the benefits, vested and accrued, under each of the three plans established by Cities Services Company (Court File No. 6, affidavit of Andrew Pierson).

The record shows all three plaintiffs reached the age of 55 in 1992 and consequently sought their retirement benefits (Court File No. 6). The record also shows that at this point, the plaintiffs were eligible for, and did receive, retirement benefits pursuant to the plans established by Cities Services Company (Court File No. 6, affidavit of Andrew Pierson; Court File No. 6, Exhs. K, L, M). The plaintiffs do not present any evidence to contradict the aforementioned statement of facts.

Plaintiffs Thomas, Harper and Seabolt assert the defendants are liable for the amount of retirement benefits the plaintiffs have allegedly lost as a result of Tennessee Chemical's bankruptcy and the PBGC's failure to provide more than the minimum amount of benefits under the plans established by Tennessee Chemical.

The defendants argue Cities Services did not assume any responsibility for the plans established by Tennessee Chemical and the plaintiffs are receiving all of the benefits to which they are entitled under those plans provided by Cities Services.

## II. ANALYSIS

### A. Summary Judgment Standard

■ Under *Fed.R.Civ.P.* 56(c), the Court will render summary judgment if there is no genuine issue as to any material fact and the

moving party is entitled to judgment as a matter of law. The burden is on the moving party to conclusively show that no genuine issue of material fact exists. *Lansing Dairy, Inc. v. Espy,* 39 F.3d 1339, 1347 (6th Cir. 1994); *Kentucky Div., Horsemen's Benev. & Prot. Assoc., Inc. v. Turfway Park Racing Assoc., Inc.,* 20 F.3d 1406, 1411 (6th Cir. 1994), and the Court must view the facts and all inferences drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Oakland Gin Co., Inc. v. Marlow,* 44 F.3d 426, 429 (6th Cir. 1995); *City Management Corp. v. U.S. Chemical Co., Inc.,* 43 F.3d 244, 250 (6th Cir.1994).

■ Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. The nonmoving party may not rest on its pleadings but must come forward with some significant probative evidence to support its claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Lansing Dairy,* 39 F.3d at 1347; *Horsemen's Benev.,* 20 F.3d at 1411. If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53.

■ The Court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question but does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *60 Ivy Street Corp. v. Alexander,* 822 F.2d 1432, 1435–36 (6th Cir.1987). The standard for summary judgment mirrors the standard for directed verdict. The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52, 106 S.Ct. at 2511–12.

There must be some probative evidence from which the jury could reasonably find for the nonmoving party. If the Court concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Id.; Lansing Dairy,* 39 F.3d at 1347; *Horsemen's Benev.,* 20 F.3d at 1411.

The defendants request summary judgment from this Court based on their argument that (1) the plaintiffs' claims are claims for additional benefits which are governed not by contract law but by § 1132 of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.;* (2) ERISA provides the sole remedy for the plaintiffs' claims; (3) even if the plaintiffs have a claim under the Purchase Agreement between Cities Services and Tennessee Chemical, none of the plaintiffs were or are entitled to the alleged guaranteed early retirement benefits of the agreement; and (4) the plaintiffs are currently receiving all of the retirement benefits to which they are entitled.

The plaintiffs respond by arguing their claims are not preempted by ERISA and must be analyzed based on the Purchase Agreement. Moreover, the plaintiffs argue they are not receiving the full amount of benefits they are entitled to due to the PBGC's failure to pay the maximum amount of benefits provided under the plans set forth by Tennessee Chemical. They contend that in the Purchase Agreement, Cities Services Company accepted the responsibility for paying the full amount of benefits which had been established prior to the sale. In other words, Cities Services Company, and therefore its successor, Occidental Petroleum, continues to stand as a contractual guarantor who has the responsibility of paying the full benefits under the pension plans even though various pension agreements had been assumed by Tennessee Chemical.

### B. *Employment Retirement Income Security Act (ERISA )*

The plaintiffs cite *Perry v. P*I*E Nationwide Inc.,* 872 F.2d 157 (6th Cir.1989), and *Martin v. Pate,* 749 F.Supp. 242 (S.D.Ala.

1990), *aff'd* 934 F.2d 1265 (11th Cir.1991), in order to suggest the Employee Retirement Income Security Act does not apply to the present case. The cases presented by the plaintiffs involve fraud on the part of one of the parties to induce the other to be a participant, whether a recipient or a provider, in a plan for benefits. The courts in these cases held that actions for fraud are more of a state rather than a federal concern. See *Perry* at 161; *Martin* at 246. However, both cases reinforce the proposition that parties seeking plan benefits or an increase of plan benefits are to have their actions governed by ERISA. The *Perry* Court stated,

> Neither party has cited any case indicating that § 1132 [of ERISA] provides a remedy of the type sought by the plaintiffs. Plaintiffs, unlike the complainants in some of the cases cited or discussed above, do not seek plan benefits or an increase in plan benefits; rather, they seek not to be bound as participants and thus to recoup their wage reductions.

*Perry* at 162 (phrase in brackets added).

■ The *Martin* Court held as well, "... generally speaking, federal substantive law, and not state law, governs a claim for benefits under ERISA." *Martin* at 244. In the case at hand, the plaintiffs do not allege any sort of fraud in the inducement, but do claim the defendants have breached a contract entitling them to additional benefits. Contract causes of action are preempted by ERISA when they "relate to" benefits due from retirement plans. *See Gordon v. Barnes Pumps, Inc.*, 999 F.2d 133 (6th Cir. 1993); *Cromwell v. Equicor–Equitable HCA Corp.*, 944 F.2d 1272, 1277 (6th Cir.1991); *Davis v. Kentucky Finance Cos. Retirement Plan*, 887 F.2d 689, 696 (6th Cir.1989). Therefore, the Court will analyze these claims under ERISA.

Section 1132 of ERISA addresses claims for additional benefits. That section states a civil action may be brought by a participant or beneficiary to

> (B) ... recover benefits due to him *under the terms of his plan,* to enforce his rights *under the terms of the plan,* or to clarify

his rights to future benefits *under the terms of the plan ....*

29 U.S.C. § 1132(a)(1)(B).

Therefore, under the terms of the respective plans, the Court must determine whether each plaintiff is entitled to additional benefits. Because the Court's inquiry focuses on plans for hourly employees and salaried employees, the claims of Mr. Harper and Mr. Thomas will be considered together, while the claims of Mr. Seabolt will be analyzed separately.

### 1. *Plaintiffs Harper and Thomas*

■ As stated earlier, Mr. Harper and Mr. Thomas were hourly employees. Therefore, their retirement benefits were provided for by Plan 008. Section 5.02 of Plan 008 outlines the requirements for early retirement. According to section 5.02, for Cities Services Company's early retirement benefits to vest, an hourly employee must have attained the age of 55 and had 10 years of vesting credit service (Court File No. 6, Exh. C). Hence, when Harper and Thomas left Cities Services Company's employment in 1982 due to the Purchase Agreement, they must have been 55 years old and have completed ten years of vesting credit service to be eligible for early retirement benefits. In 1982, however, the record shows Mr. Harper and Mr. Thomas were only forty-five years of age. As a result, they were not eligible for the early retirement benefits under section 5.02 of Plan 008 (Court File No. 6, affidavit of Andrew Pierson).

The record demonstrates, however, Plan 008 was changed as indicated in the letter dated July 28, 1983. Upon review of that letter, it is clear the requirements for early retirement remained the same; the change only provided that those who had remained in continuous employment with Tennessee Chemical and were eligible to retire on or before April 1, 1986, would be eligible for the early retirement benefits under section 5.02 and as calculated by section 6.02 of the plan. Since, as mentioned above, plaintiffs Harper and Thomas did not attain 55 until 1992, even the change in the plan did not entitle these plaintiffs to the amount of benefits provided by sections 5.02 and 6.02 of Plan 008.

■ The Court does note Occidental Petroleum Services terminated Plan 008, as well as Plans 012 and 017 in October of 1983, well before any early retirement benefits could have vested with respect to Harper and Thomas. However, ERISA does not prevent elimination of even previously offered benefits as long as they are not vested or accrued. *Coleman v. General Elec. Co.*, 643 F.Supp. 1229, 1238 (E.D.Tenn.1986).

> [I]t is not *per se* unlawful to alter a pension plan with respect to prospective benefits, provided the change doesn't violate other ERISA requirements.

*Dhayer v. Weirton Steel Div. of Nat. Steel Corp.*, 571 F.Supp. 316, 324 (N.D.W.Va.1983).

Since, the early retirement benefits provided for by sections 5.02 and 6.02 of Plan 008 were not vested with regard to Harper and Thomas even when the plan was eliminated, ERISA was not violated concerning those benefits. Moreover, in spite of the termination of Plan 008, because Occidental purchased an annuity to pay, when due, all vested and accrued benefits under the plan and the plaintiffs have failed to present conflicting evidence, the Court finds that those benefits under sections 5.02 and 6.02 of Plan 008 have been protected and therefore, there has been no ERISA violation.

■ Although plaintiffs Harper and Thomas are not entitled to benefits under sections 5.02 and 6.02 of Plan 008, they are eligible for benefits under section 5.05 of the plan. This section states, in relevant part,

> (a) A member who has completed at least 10 years of Vesting-credit Service and whose employment has been terminated prior to his Normal Retirement Date for a reason other than early or disability retirement under the Plan shall be eligible for a vested deferred retirement benefit. The vested deferred retirement benefit shall commence on the Member's Normal Retirement Date or on the early retirement date defined in Section 5.02 (Early retirement).

Plaintiffs Harper and Thomas had completed significantly more than ten years of vesting-credit service with Cities Services Company and had ended their employment with Cities Services Company due to the transfer of assets from Cities Services to Tennessee Chemical; therefore, they are entitled to the benefits set out by this section of Plan 008. The affidavit of Andrew Pierson, as well as documentation demonstrating the plaintiffs were aware of and did receive the amount they are entitled to under section 5.05 of Plan 008 (Court File No. 6, affidavit of Andrew Pierson; Court File No. 6, Exhs. K, L, M), indicate the plaintiffs have received these vested benefits. Since the plaintiffs have not presented contrary evidence, the Court finds plaintiffs Harper and Thomas are receiving those benefits to which they are entitled under ERISA.

■ Even if ERISA does not provide the sole remedy in this case and does not preempt Harper and Thomas' contract claims, the defendants would still be entitled to summary judgment. The plaintiffs contend Cities Services guaranteed the payment of early retirement benefits in the Purchase Agreement of 1982. Harper and Thomas do not provide any excerpts from the purchase agreement to substantiate this claim nor do they provide any other evidence; however, the defendants provide the Court with a portion of the agreement addressing the pension plans in place at the time of the sale. After reviewing this section of the contract, the Court finds the agreement did contain a guarantee, but this guarantee was very narrow and did not apply to Harper and Thomas. Paragraph 1(m)(a) of the Purchase Agreement states, in pertinent part,

> Vesting-credit Service under the Seller's Employees' Retirement Plan of Industrial Chemicals Division, Chemicals and Minerals Group of Cities Service Company shall be allowed for employment with the Purchaser if such employment would have counted as Vesting-credit Service under the above-mentioned Plan if the employment had been with the Seller for an hourly employee of the Seller who is a Member of the above-mentioned plan and who becomes an employee of the Purchaser on the Closing Date.

> With respect to such an employee of the Seller who on the Closing Date shall not be entitled to retire under the above-men-

tioned Retirement Plan but who during continuous employment with the Purchaser and on or prior to April 1, 1986, shall become entitled to retire early under the above-mentioned Retirement Plan and shall, before or after April 1, 1986, retire early thereunder directly from employment with the Purchaser, Seller will guarantee to pay out of its general assets monthly to or on behalf of such employee the difference, based on the benefit chosen, between

(i) the amount which such employee's pension under the above-mentioned Retirement Plan would have been had he been entitled thereunder to the formula reduction provided for in Section 6.02 of the above-mentioned Retirement Plan and (ii) the amount of such employee's actual pension under the above-mentioned Retirement Plan ... less the sum of any amount paid (iii) to or on behalf of such employee out of the pension plan which the Purchaser shall establish for the hourly employees and (iv) to or on behalf of such employee by the PBGC (whether or not out of the general assets of the Purchaser)....

(Court File No. 6, Exh. A)

The plain language of the agreement leads the Court to find this guarantee only applied to hourly employees who were members of the plan and who, under the plan, were eligible to retire early from employment with Tennessee Chemical Co. on or before April 1, 1986. Plan 008 allowed for early retirement after an employee had completed 10 years of vesting-credit service and had attained the age of 55. The plaintiffs did not reach the early retirement age as defined by the plan until 1992. Consequently, even if the agreement could be construed to state Cities Services Company guaranteed to pay those benefits which Tennessee Chemical could not provide, because plaintiffs Harper and Thomas did not meet the requirements for this guarantee, they are not entitled to additional benefits under the Purchase Agreement either. Hence, although plaintiffs Harper and Thomas may not be receiving from the PBGC the maximum amount of benefits as set out in pension plans established by Tennessee Chemical, because they were never

eligible for benefits under sections 5.02 and 6.02 of Plan 008, they are not entitled to receive the difference between that amount of benefits and what they are currently receiving from Tennessee Chemical. Consequently, the defendants' motion for summary judgment regarding the claims of plaintiffs Harper and Thomas will be **GRANTED.**

### 2. *Plaintiff Seabolt*

Thomas Seabolt was a salaried employee of Cities Services Company and a member of Plans 012 and 017. Based on these plans as well, an employee must have reached the age of 55 to be eligible for full early retirement benefits. Like Harper and Thomas, Mr. Seabolt did not attain the age of 55 until 1992. The affidavit of Andrew Pierson, as well as other evidence presented by the defendant, shows Mr. Seabolt has received, and continues to receive, those benefits to which he is entitled under Plan 012, vested deferred retirement, and Plan 017, early retirement benefits based on the discretionary provision of section 6.08 of the plan (Court File No. 6, affidavit of Andrew Pierson; Court File No. 6, Exh. M). Because the plaintiff has not presented any evidence to the contrary, the Court holds there is no violation of ERISA.

Moreover, Mr. Seabolt premises his claims on the same contractual "guarantee" relied upon by plaintiffs Harper and Thomas. Yet, from the language of the agreement quoted above, this Court concludes the portion guaranteeing certain benefits applies only to hourly employees who met the necessary requirements, i.e. eligible for early retirement by April 1, 1986 and retired before or after April 1, 1986. Since Mr. Seabolt was a salaried employee, he is not entitled to the benefits guaranteed by that section. Paragraph 1(m)(B) of the Purchase Agreement, however, which applied to salaried employees of Cities Services Company, indicates those salaried employees who "retire directly from continuous employment with the Purchaser commencing on the Closing Date shall be deemed to be retirement from employment with the Seller" (Court File No. 6, Exh. A). Mr. Seabolt was not eligible to retire on the closing date of the transaction, nor did he retire from Tennessee

Chemical on that date; therefore, plaintiff Seabolt would not be entitled to additional benefits under the contract.

Therefore, summary judgment as to the claims brought by plaintiff Seabolt will be **GRANTED.**

C. *Plaintiffs' Motion for Class Certification*

In light of the Court's decision to grant the defendants' motion for summary judgment, the plaintiff's motion to certify class action is moot and will therefore be **DENIED.**

III. *CONCLUSION*

In conclusion, the defendants' motion for summary judgment will be **GRANTED,** and plaintiffs' motion to certify class action will be **DENIED.**