In re TOM WOODS USED CARS, INC., Debtor.

NORTH GEORGIA TOYOTA, Plaintiff,

v.

Richard P. JAHN, Jr., Trustee, Defendant.

Bankruptcy No. 1-81-00801.
Adv. No. 1-81-0353.

United States Bankruptcy Court, E.D. Tennessee.

Nov. 16, 1982.

Kenneth R. Starr, Chattanooga, Tenn., for plaintiff.

Harold L. North, Jr., Chattanooga, Tenn., for defendant.

## MEMORANDUM

RALPH H. KELLEY, Bankruptcy Judge.

This matter is before the court upon complaint brought by a seller to recover the proceeds of the sale of an automobile from defendant trustee. The parties filed cross motions for summary judgment and stipulated certain facts found in the pleadings, briefs, and oral argument.

Even though the parties have conceded most of the material facts, two theories as to the legal results of certain business practices have been urged upon the court. Thus a careful accounting of the facts is necessary.

The undisputed facts began when plaintiff, North Georgia Toyota, delivered a 1979 Chevrolet Camaro Z–28 automobile to the debtor, Tom Woods Used Cars, Inc., (Tom Woods), on or about March 6, 1981. No certificate of title accompanied the car and no payments were made toward the purchase price of the vehicle. A bill of sale from North Georgia Toyota to Tom Woods indicated an agreed sale price of $3,800.00.

More than a month later, on April 10, 1981, a certificate of title was delivered to Tom Woods, and North Georgia Toyota in return received a check in the amount of $3,800.00. It was drawn on Tom Woods' account at the East Ridge, Tennessee branch of Pioneer Bank for the full purchase price. On April 14, 1981, the check was returned by Pioneer Bank to North Georgia marked "uncollected funds." After learning that the check was dishonored, an employee of North Georgia Toyota telephoned the debtor with the intention of voiding the transaction of March 6, 1981.

Tom Woods Used Cars filed its petition in bankruptcy on April 28, 1981. The trustee in bankruptcy sold the automobile and this dispute is over the proceeds.

The testimony, pleadings, fact stipulations and an affidavit from the North Georgia Toyota sales manager indicate a clear course of dealing existed between the parties for some time. The transaction of March 6, 1981, is the same as prior conduct where both parties expected a subsequent exchange of buyer's check or draft for seller's certificate of title. The vehicles, in the usual course of dealing, would be placed on the lot with other vehicles obtained from a number of diverse sources.

Except for the bill of sale, neither party signed any other written document relative to the transaction. There was no security agreement, no financing statement, no lien recorded, and no written contract. Tom Woods exercised complete control over the vehicle and no physical evidence would indicate that it belonged to anyone other than Tom Woods. The parties obviously intended that the sale was to be no different from prior transactions.

### Discussion

■ Between the seller and the buyer who has received goods but failed to pay as agreed, the seller doubtlessly has the superior right to the goods. It is a general rule that as successor to the bankrupt debtor, the trustee in bankruptcy acquires in the debtor's property no greater interest than the debtor has. See 11 U.S.C. §§ 541 & 323; 4 Collier on Bankruptcy ¶ 541.01 (15th ed. 1981), hereinafter cited as Collier. However, as of the time of filing of the bankruptcy petition, the trustee also acquires the rights of a creditor who has a perfected judgment lien on the debtor's property and is without knowledge of any claims to the property by third parties. 11 U.S.C. § 544(a); 4 Collier ¶ 544.02.

At the time of bankruptcy Tom Woods had an interest in the car and the trustee acquired a judgment lien on Tom Woods' interest. The parties have rightfully assumed that Tom Woods had whatever interest the law gives to a buyer under the circumstances of this case. The question is whether the trustee's rights as a judgment lien creditor are superior to the rights of North Georgia Toyota. Article 2 of the Uniform Commercial Code, the UCC, as enacted in Tennessee is the primary controlling law. Tenn.Code Ann. §§ 47–2–101— 2–725.

In March, 1981, North Georgia Toyota delivered the car to Tom Woods under a contract of sale. Article 2 of the UCC generally allows the parties to a sale to agree on when title to or ownership of goods will pass to the buyer, but it limits the effect of a seller's retention of title after delivery. Section 2–401 provides that retention of title after delivery only gives the seller a security interest in the goods. Tenn.Code Ann. §§ 47–2–401(1) & 47–1–201(37).

■ Once an automobile is delivered to the buyer, nondelivery of the title certificate does not prevent title from passing to the buyer, does not give the seller any rights greater than a security interest, and in fact does not even give the seller a security interest unless there is a written agreement. See Tenn.Code Ann. § 47–9–203(1); *In re Tom Woods Used Cars, Inc.,* 21 B.R. 560 (Bkrtcy.E.D.Tenn.1982) (*Jahn v. Quintrell*).

■ The result is that Tom Woods became the owner of the car when it was delivered in March, and North Georgia did not even have a security interest.

North Georgia argued that delivery did not legally occur until the title certificate was delivered. The argument appears to be that there was to be no sale until the title certificate was delivered. The argument must be rejected.

The seller can sometimes show that when it originally delivered the goods, it did not intend to sell them and the buyer did not intend to buy them. In that situation, the original delivery was not delivery for the purposes of Article 2, since it deals with the effect of delivery in a sale. For Article 2's purposes, delivery in such a situation will usually occur when the parties agree to a sale. Tenn.Code Ann. § 47–2–401(3).[1]

Obviously the facts of this case do not fit that pattern. The car was originally delivered to Tom Woods under a sale agreement. Non-delivery of the title certificate did not prevent a sale from occurring. North Georgia's alleged intention to remain the owner until delivery of the title certificate was nothing more than an intention to retain title after the delivery of sold goods, which at best would have given North Georgia an unperfected security interest if there had been a written agreement to retain title.

■ North Georgia argued that it was a cash seller with a right to reclaim the car at the time of Tom Woods' bankruptcy. Having concluded that delivery under Article 2 occurred when the car was originally delivered, the court must hold that this was not a cash sale. The essence of a cash sale is that delivery will not be made except on tender of payment. Tenn.Code Ann. § 47–2–507(2).[2] North Georgia delivered the car without demanding payment.

■ Furthermore, the court believes it is appropriate to require both credit and cash sellers to demand return of the goods with-

in ten days after delivery to the buyer or lose the right to reclaim against a third party, such as the trustee, who has acquired an interest in the goods without knowledge of the seller's rights.[3] See Tenn.Code Ann. § 47–2–702(3) & Official Comment 3; § 47–2–507, Official Comment 3; *Szabo v. Vinton Motors,* 630 F.2d 1, 26 U.C.C. Rep. Serv. 896 (1st Cir.1980); *In re Samuels & Co., Inc.,* 526 F.2d 1238, 18 U.C.C. Rep.Serv. 545 (5th Cir.1976) cert. den. 429 U.S. 834, 97 S.Ct. 98, 50 L.Ed.2d 99 (1976); *In re Helms Veneer Corp.,* 287 F.Supp. 840, 5 U.C.C. Rep.Serv. 977 (W.D.Va.1968); *In re Kee Lox Mfg. Co.,* 22 U.C.C. Rep.Serv. 938 (Bkrtcy.E.D.Pa.1977); *In re Richardson Homes Corp.,* 18 U.C.C. Rep.Serv. 384 (Bkrtcy.N.D.Ind.1975); *In re Bar-Wood, Inc.,* 15 U.C.C. Rep.Serv. 828 (Bkrtcy.S.D. Fla.1974); *In re Kirk Kabinets, Inc.,* 15 U.C.C. Rep.Serv. 746 (Bkrtcy.M.D.Ga.1974). North Georgia did not demand return within ten days after the delivery on or about March 6.

The transaction in this case obviously was not a sale on approval or a consignment in which North Georgia took the steps necessary to protect its rights against the claims of Tom Woods' creditors and transferees. See Tenn.Code Ann. § 47–2–326.

The court concludes that there is no appropriate legal characterization of the facts that would give North Georgia Toyota a claim to the car superior to the rights of the trustee as a judgment creditor. It is therefore unnecessary to consider whether Bankruptcy Code § 546(c) preserves or limits an unpaid seller's right to reclaim under state law.

The trustee is entitled to the proceeds of the sale. An order will be entered accordingly.

---

1. The last sentence of the definition of document of title, Tenn.Code Ann. § 47–1–201(15), makes clear that a certificate of title to an automobile is not a document of title:

    To be a document of title a document must purport to be issued by or addressed to a bailee and purport to cover goods in the bailee's possession which are either identified or are fungible portions of an identified mass.

2. See note 1, above.

3. The check could not have been a misrepresentation of solvency that extended the time to demand return because the check was given *after* delivery. See Tenn.Code Ann. § 47–2–702(2); *Liles Bros. & Son v. Wright,* 638 S.W.2d 383 (Tenn.1982).

This memorandum constitutes findings of fact and conclusions of law. Bankruptcy Rule 752.