In re The JULIEN COMPANY, Debtor.

OAKLAND GIN COMPANY, INC.,
Defendant–Appellant,

v.

Jack MARLOW, Trustee for the Julien
Company, Plaintiff–Appellee.

No. 93–6201.

United States Court of Appeals,
Sixth Circuit.

Argued Sept. 20, 1994.

Decided Jan. 25, 1995.

John McQuiston, II (argued and briefed), Bruce M. Kahn, Evans & Petree, Memphis, TN, for defendant-appellant.

C. William Denton, Borod & Kramer, David J. Cocke (argued and briefed), Bogatin, Lawson & Chiapella, Memphis, TN, for plaintiff-appellee.

Before SUHRHEINRICH, SILER, and BATCHELDER, Circuit Judges.

SILER, Circuit Judge.

Defendant Oakland Gin Co., Inc. challenges the district court's decision affirming the bankruptcy court's ruling in favor of the bankruptcy trustee for the Julien Company on summary judgment regarding defendant's claims under Articles 2 and 9 of the Uniform Commercial Code and the United States Warehouse Act, 7 U.S.C. § 262. The questions concern the superior title in the delivered cotton.

For the reasons stated below, we affirm the decision of the district court.

## I.

Oakland Gin Co., Inc. ("Oakland") and the Julien Company ("Julien Co.") entered into a series of contracts under which Oakland, representing a number of cotton farmers, sold bales of cotton to the Julien Co. The contracts required that Oakland, after ginning and baling the cotton, draw a draft on the Julien Co., with an accompanying bill of lading, at the time Oakland loaded the cotton for delivery. Both documents were to be submitted by Oakland to the Union Planters Bank in Memphis, Tennessee, for payment out of the Julien Co.'s account at the time of delivery. While not printed in the contracts, both parties understood that Oakland would deliver the cotton to the Julien Warehouse, a warehouse owned by the Julien Warehouse Company, a subsidiary of Julien Co., the buyer, and operated by Federal Compress & Warehouse Company, Inc. ("Federal"). Federal is an independently-licensed warehouseman which manages the Julien Warehouse pursuant to a management agreement with the Julien Warehouse Company. As the parties did not intend the warehouse to store the cotton, however, the contracts did not provide for the use of warehouse receipts. Instead, the parties intended to treat the cotton as "flow-through" cotton, which is cotton that remains in the warehouse only long enough to fill orders and immediately be reshipped.

Early in December, 1991, Oakland delivered four separate cotton shipments pursuant to four separate contracts. Several days after each delivery, Oakland forwarded drafts to the Union Planters Bank. The bank, however, dishonored the drafts. Oakland then orally demanded that Federal return the cotton. In response, Federal wrote to Julien Co. that it should claim its interest in the cotton or Federal would be bound to turn over the cotton to Oakland. Rather than turn over the cotton to Oakland, however, Federal filed an interpleader action in an Alabama state court to determine the rightful title to the cotton in question. Soon thereafter, Julien Co. filed its petition in bankruptcy and the court appointed Jack Marlow as trustee.

Marlow filed a complaint alleging superior title in the proceeds of the cotton.[1] Pursuant to a consent agreement, the parties removed the interpleader action to bankruptcy court, and proceeded in the present adversary proceeding. The bankruptcy court resolved the case on summary judgment, finding that the trustee had superior title in the cotton as a lien creditor of the estate, Oakland failed to reclaim the cotton, and the United States Warehouse Act did not apply to Oakland's situation. The district court affirmed.

## II.

In bankruptcy, the district court acts as an appellate tribunal, and this court, in turn, reviews the district court's decision on appeal. 28 U.S.C. § 158. The bankruptcy court decided this case on summary judgment. This court then reviews the district court's determination de novo. *Pinney Dock and Transp. Co. v. Penn. Cent. Corp.*, 838 F.2d 1445, 1472 (6th Cir.), *cert. denied*, 488 U.S. 880, 109 S.Ct. 196, 102 L.Ed.2d 166 (1988). Summary judgment is proper where

---

1. The property at issue is actually the proceeds of the disputed cotton as the parties agreed to sell the cotton and hold the funds in escrow until the resolution of the present case.

the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). We must view all facts and inferences in the light most favorable to the non-moving party. *White v. Turfway Park Racing Ass'n*, 909 F.2d 941, 943 (6th Cir.1990).

### A) Federal Compress & Warehouse Company, Inc. as Common Law Bailee.

■ As the bankruptcy and district courts correctly noted, the bankruptcy trustee only has rights in the cotton at issue if the cotton is "property of the estate." 11 U.S.C. § 363. The term "property of the estate" encompasses all legal and equitable interests that the debtor has in property at the commencement of the bankruptcy case. 11 U.S.C. § 541(a). This must be determined by reference to state law, *In re White*, 851 F.2d 170, 173 (6th Cir.1988), which in this case is Tennessee law, as provided in the contracts.

■ Oakland first argues that the Julien Warehouse and/or Federal[2] owed Oakland an obligation as bailee to return the cotton to Oakland, as bailor, upon Oakland's demand. The standard elements for a common law bailment in Tennessee are "a delivery of personalty for a particular purpose or on mere deposit, on a contract express or implied; that after the purpose has been fulfilled, it shall be redelivered to the person who delivered it...." *Dispeker v. New Southern Hotel Co.*, 213 Tenn. 378, 373 S.W.2d 904 (1963). Whether a bailment relationship exists depends on the facts and circumstances of the individual case, *In re Crabtree*, 48 B.R. 528, 532 (Bankr.E.D. Tenn. 1985), and the bailment agreement need not be express as "[a] bailment may result from conduct, though neither foreseen nor contemplated." *Id.*

■ Oakland contends that, while the bailment with Federal was not express, the parties' conduct gave rise to a bailment relationship. Oakland points out that Federal was an independently-licensed warehouseman, having no contractual obligation to the Julien Co. (although it was contractually bound to the Julien Co.'s corporate affiliate). Oakland also emphasizes that Federal admitted in its letter to the Julien Co. that it felt obligated to return the goods to Oakland. Finally, as Oakland retained the bills of lading in the present situation, Oakland argues that this court may not consider the bill's printed terms in deciding whether a bailment existed.

After reviewing the record, however, we find Oakland's version of the facts to be incomplete. The circumstances as a whole strongly indicate that the warehouse was actually an agent of the buyer rather than Oakland's bailee. The owner of the warehouse, the Julien Warehouse Co., was an affiliate of the Julien Co. and the two entities shared officers and shareholders. While Federal was independently-licensed, it operated the warehouse under a management agreement with the warehouse company mainly for the benefit of the Julien Co. Indeed, Federal stipulated that it dealt in cotton solely for the benefit, and in the control, of the Julien Co. The bills of lading used by the parties for a number of prior contracts, although not delivered for the shipments at issue, list the Julien Co. as the shipper, the Julien Warehouse Co. as Julien Co's consignee, and Oakland as the shipper's agent. Finally, the cotton at issue was flow-through cotton, under which Federal retained the custody of the cotton only so long as it took to immediately re-ship the cotton to Julien Co.'s customers. No storage or receipts were intended or used in these transactions, which indicates that a bailment did not exist.

The prior dealings of the parties and the circumstances of the present case lead us to conclude that Federal was not acting as bailee for Oakland at the time in question. For

---

**2.** The record and the parties' briefs are confusing as to which entity is at issue as the bailee. Both lower courts decided that the Julien Warehouse was not a bailee for Oakland, but Oakland now argues that the real issue is whether Federal is a bailee. Although we will consider this issue, it is possible that the issue was waived, as no support can be found in the record concerning Federal's status being an issue prior to now.

these reasons, we affirm the lower courts' determination of this issue.

### B) Tennessee Code §§ 47–9–304 and 305.

Next, Oakland argues that it has a perfected security interest in the cotton pursuant to Tenn.Code Ann. §§ 47–9–304 and 305 that succeeds the trustee's status as a lien creditor. Section 47–9–304 provides that "[a] security interest in goods in the possession of a bailee other than one who has issued a negotiable document . . . is perfected by . . . the bailee's receipt of notification of the secured party's interest. . . ." Under § 47–9–305, a secured party who claims perfection by possession (i.e., collateral in the hands of a bailee), is deemed to have possession from the time the bailee receives notice. Oakland argues that when it demanded the return of the goods from the warehouse, it satisfied both of these sections and attained perfection, thereby defeating the trustee's claim. However, this conclusion requires the court to find that Federal or the Julien Warehouse acted as a bailee for Oakland. In light of this court's resolution of the common law bailment issue, the present argument also fails.

### C) Passage of Title.

Oakland also argues that the bankruptcy court erred in its discussion of passage of title concepts when deciding for the trustee. Tenn.Code Ann. § 47–2–401(1). This argument does not require this court's attention, however, as neither lower court actually relied on this section in finding for the trustee. Moreover, the trustee does not contest that § 47–2–401(1) does not apply in this case. Rather, he correctly notes that as this section does not apply, Article 2 or 9 provides Oakland's only possible remedies. For this reason, we will not decide this issue on appeal.

### D) Conditional Delivery.

■ While Oakland failed to clearly raise this issue in its brief, based upon various statements made in Oakland's brief, the trustee's brief, and the lower courts' opinions, at issue is whether Oakland's delivery was conditioned on payment, thereby giving Oakland a superior interest in the unpaid cotton. Oakland appears to argue that it retained both a security interest in the cotton superior to that of the trustee and a right to reclaim the cotton when the Julien Co. failed to make payment at the time of Oakland's delivery of the cotton.

■ Section 47–2–507(2) of the Tennessee Code provides that "[w]here payment is due and demanded on the delivery to the buyer of the goods or documents of title, his right as against the seller to retain or dispose of them is conditional upon his making the payment due." In connection with this, Tenn. Code Ann. § 47–2–511(1) provides that "tender of payment is a condition to the seller's duty to tender and complete any delivery." A seller who obtains "conditional" seller status enjoys two benefits: the right to reclaim the goods and the right to a security interest. *In re Ault,* 6 B.R. 58, 67 (Bankr.E.D. Tenn. 1980). Not all sales are conditional, however. A sale is "conditional" only when delivery and payment are *concurrent* conditions. *In re Tom Woods Used Cars, Inc.,* 24 B.R. 529, 531 & n. 3 (Bankr.E.D. Tenn.1982); Tenn. Code Ann. § 47–2–507(2).

The contracts required Oakland to draw a draft of the Julien Co., with an accompanying bill of lading, at the time Oakland loaded the cotton for delivery. Oakland was then to submit the bill of lading and draft at the time of delivery and Julien Co. was to pay for the cotton. This, however, did not occur. Instead, Oakland loaded and shipped the cotton to the warehouse, while retaining the bills, and submitted the drafts days later. Hence, delivery and payment did not happen concurrently. While the parties may have intended the sales to be conditional at the time of contracting, in reality, they were not. This renders §§ 47–2–507 and 511 inapplicable. *See In re Tom Woods Used Cars, Inc.,* 24 B.R. at 531 (as seller actually delivered the car without demanding payment, § 47–2–507(2)'s reclamation provision inapplicable).

### E) The Warehouse Act.

■ Oakland contends that Federal had a duty to return the cotton upon Oakland's demand pursuant to the United States Ware-

house Act, 7 U.S.C. § 241, et seq. Section 262 of the Warehouse Act states:

A warehouseman conducting a warehouse licensed under this chapter, in the absence of lawful excuse, shall, without unnecessary delay, deliver the agricultural products stored therein upon a demand made either by the holder of a receipt for such agricultural products or by the depositor thereof if such demand be accompanied with . . . (b) an offer to surrender the receipt, if negotiable, with such endorsements as would be necessary for the negotiation of the receipt. . . .

7 U.S.C. § 262. It is Oakland's position that Federal was required to release the cotton upon Oakland's oral demand. The bankruptcy court rejected this claim, noting that § 262 covered only those transactions evidenced by a warehouse receipt and in which the warehouse "stored" the agricultural product. Oakland claims this was error.

Case law fails to clarify whether the Warehouse Act applies to situations that do not involve the issuance of a warehouse receipt. The absence of case law on this subject is not determinative, however, as the plain language of § 262 supports the conclusion that the Act applies only in situations involving the use of warehouse receipts. For instance, § 262(b) requires a depositor to offer to surrender a receipt when making its demand. This implies that a warehouse receipt would be present when making the demand.

It is not necessary for this court to decide that issue, however, as the Act indicates that it governs only agricultural products "stored" in warehouses. *See Greater Baton Rouge Port Comm'n v. United States*, 287 F.2d 86, 90 (5th Cir.1961), *cert. denied*, 368 U.S. 985, 82 S.Ct. 600, 7 L.Ed.2d 523 (1962). Many sections of the Warehouse Act support this conclusion. For instance, § 255, which deals with which deposits of products are subject to the Act, speaks of "person[s] who deposit agricultural products for *storage* in a warehouse. . . ." 7 U.S.C. § 255 (emphasis added). Also, § 242 defines a "warehouseman" to be "a person lawfully engaged in the *busi-*

*ness of storing* agricultural products. . . ." 7 U.S.C. § 242 (emphasis added). Finally, § 262 itself speaks of the warehouseman's duty to turn over "products stored." 7 U.S.C. § 262.

The parties did not intend for Federal to "store" this cotton. Rather, as the district court properly noted, this cotton was "flow-through" cotton. This finding of fact is not clearly erroneous. The parties never intended to pay warehouse fees and Federal issued no warehouse receipts to evidence a storage agreement. As the cotton at issue was not "stored" by Federal, the Warehouse Act does not govern the transactions in issue.

■ Lastly, as the bankruptcy court correctly noted, § 262 of the Warehouse Act does not govern as Federal had a "lawful excuse" for non-delivery. Federal found itself in the middle of a legitimate dispute concerning the ownership of the cotton. This dispute renders inapplicable the Warehouse Act's requirements regarding a warehouse's duty to release the product.

## F) Bankruptcy Reclamation.

■ Oakland contends that it reclaimed the cotton. Under § 47–2–702(2) of the Tennessee Code, "[w]here a seller discovers that the buyer has received goods on credit while insolvent he may reclaim the goods upon demand made within ten (10) days after the receipt." This section allows the demand to be oral and defines the term "insolvency," in part, as when a debtor has "ceased to pay his debts in the ordinary course of business." Tenn.Code Ann. § 47–1–201(23). In contrast, 11 U.S.C. § 546(c) allows a seller to successfully reclaim his property as against the trustee only when, among other things: 1) the buyer is insolvent, as the term is defined in the Bankruptcy Code, at the time of receipt of the goods; 2) the seller satisfied state statutory or common law reclamation requirements; and 3) the seller made a *written* demand for reclamation within ten days of the delivery.[3]

---

3. Section 546(c) provides:
the rights and powers of a trustee . . . are subject to any statutory or common-law right

of a seller of goods that has sold goods to the debtor, in the ordinary course of such seller's

As an initial matter, while Oakland satisfied § 47–2–702(2), Oakland failed to meet § 546(c)'s reclamation requirements. Oakland offered no evidence that Julien Co.'s liabilities actually exceeded its assets at the time that Oakland demanded that Federal return the cotton to Oakland. Instead, Oakland had only "heard" that the buyer was having financial difficulty. Also, Oakland failed to make the mandatory written demand.[4]

Oakland contends that the lower courts erred in applying § 546(c) to the present case. In Oakland's view, as the interpleader suit was filed prior to the debtor's bankruptcy, Tenn.Code Ann. § 47–2–702(2), rather than federal bankruptcy law, governs the reclamation claim. A minority of courts favor Oakland's position, holding that a court cannot retroactively apply § 546(c) to a creditor once the creditor has satisfied state law reclamation prior to the debtor's bankruptcy. *In re Bearhouse, Inc.*, 84 B.R. 552 (Bankr. W.D. Ark.1988); *In re A. G. S. Food Systems, Inc.*, 14 B.R. 27 (Bankr.D.S.C.1980).

However, an overwhelming majority of jurisdictions have held that "§ 546(c) provides the exclusive remedy for a seller who seeks to reclaim goods from a debtor in bankruptcy." *In re Rawson Food Service, Inc.*, 846 F.2d 1343, 1346 (11th Cir.1988); *see, e.g., In re Dynamic Technologies Corp.*, 106 B.R. 994, 1003 (Bankr.D.Minn.1989); *In re Rozel Industries, Inc.*, 74 B.R. 643, 644 (Bankr. N.D. Ill.1987) (offering an exhaustive list of courts following the majority approach); *In re HRT Industries, Inc.*, 29 B.R. 861 (Bankr. S.D.N.Y.1983); *In re Jeanes Mechanical Contractors, Inc.*, 32 B.R. 657, 658–59 (Bankr.W.D.Ky.1983); *In re Contract Interiors, Inc.*, 14 B.R. 670, 675 (Bankr.E.D.Mich. 1981). These courts base this conclusion, in part, on the reason for § 546(c). With the passage of U.C.C. § 2–702, many courts were confused over when and how a creditor's

right to reclaim under the U.C.C. coincides with the bankruptcy trustee's right to the property. Section 546(c) attempted to resolve this dilemma by "making it clear that the right of reclamation is valid although bankruptcy intervenes. However, it specifies the precise conditions under which the right will be recognized." *Jeanes Mechanical Contractors*, 32 B.R. at 659 n. 4.

The language of § 546(c) also supports this interpretation. It states that the trustee's powers in bankruptcy are subject to the seller's statutory or common law right to reclamation but only as long as the seller satisfies certain conditions. By its own terms then, § 546(c) governs here.

We find the majority's approach to be persuasive and adopt this approach. Therefore, we reject Oakland's argument and affirm the district court's decision denying Oakland's reclamation claim.

Finally, we find it unnecessary to consider Oakland's contention that § 546(c) is inapplicable as the parties' consent agreement provided that the adversary proceeding would "replace" the previous interpleader to the same effect as if the parties had removed the interpleader action to bankruptcy court. Not only did Oakland stay silent on this issue until the present appeal, it failed to argue the issue beyond making a bare assertion. An appellant must do more in his brief than just raise the issue; he must press it in a "professionally responsible fashion." *Pearce v. Sullivan*, 871 F.2d 61, 64 (7th Cir.1989).

**AFFIRMED.**

---

business, to reclaim such goods if the debtor has received such goods while insolvent, but— (1) such a seller may not reclaim any such goods unless such seller demands in writing reclamation of such goods before ten days after receipt of such goods by the debtor....

4. Oakland makes the argument that Federal's letter to the Julien Company was Oakland's writ-

ten demand, but this argument is without merit. Section 546 clearly states that the "seller" must make the written demand, not a warehouseman or bailee of the seller. Furthermore, Oakland cites no case law that has interpreted this requirement differently.