**AMERICAN MANUFACTURERS MUTUAL INSURANCE COMPANY, Plaintiff,**

v.

**Dennie TOWNSON and Glenda Townson, Defendants.**

No. 1:94–CV–297.

United States District Court, E.D. Tennessee, at Chattanooga.

Dec. 5, 1995.

Barbara Jo Call, Atlanta, GA, Michael A. McKenzie, Cozen and O'Connor, Atlanta, GA, for American Manufacturers Mutual Insurance Company.

John C. Cavett, Jr., Cavett & Abbott, Chattanooga, TN, for Dennie Townson, Glenda Townson.

## MEMORANDUM

COLLIER, District Judge.

This matter is before the Court upon the summary judgment motions of defendants Dennie and Glenda Townson (Court File Nos. 25 and 46) brought pursuant to Rule 56 of the *Federal Rules of Civil Procedure*. In their first motion for summary judgment, the

defendants ask this Court to render judgment as a matter of law in favor of the defendants regarding the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.*, claim against them. The second motion for summary judgment requests judgment as a matter of law concerning the common law fraud claim brought by plaintiff American Manufacturers Mutual Insurance Company against defendants. For the following reasons, this Court will DENY both motions for summary judgment brought by the defendants.

## I. FACTUAL ALLEGATIONS

The defendants, Dennie and Glenda Townson, allege on January 4, 1992, upon returning from a weekend trip to Gatlinburg, Tennessee, they discovered that their home had been burglarized (Court File No. 47). The defendants claim they discovered several items of personal property had been stolen, including jewelry, a Stradivarius violin, and various household appliances (Court File No. 47). In addition to the stolen property, the defendants allege severe water damage to their home resulting from a water faucet which was apparently broken during the alleged break-in (Court File No. 47).

After reporting that their house had been broken into, Dennie Townson reported the supposed theft and the water damage to his insurance agent who, in turn, reported it to Peter Hanrahan, the in-house adjuster for the plaintiff, American Manufacturers Insurance Company (Court File No. 47). Various telephone conferences took place between the defendants and Mr. Hanrahan during the weeks following the initial report (Court File No. 47). Also, a series of proofs of loss were submitted by the defendants (Court File No. 47).

The plaintiff conducted an investigation of the claim presented by the defendants (Court File No. 48). During this investigation, plaintiff discovered surrounding circumstances that led it to suspect the defendants' claim was fraudulent, including the nature of other claims filings with different insurance companies (Court File No. 1). The defendants eventually withdrew their claim for insurance proceeds from the plaintiff; however, the plaintiff claims such withdrawal occurred after it had incurred a number of expenses (Court File No. 1).

Plaintiff contends the actions of the defendants constitute common law fraud, and the use of the telephone and the mail to conduct this fraud also makes the defendants liable under the Racketeer Influenced and Corrupt Organizations Act ("RICO").

Regarding the plaintiff's claim of common law fraud, the defendants argue that American Manufacturers did not rely on the statements of the defendants because, one, American Manufacturers investigated the claim and, two, Peter Hanrahan suspected the claim was fraudulent. As for the RICO claim, the defendants contend the plaintiff failed to sufficiently plead the essential elements of this claim thereby requiring this Court to dismiss the RICO claim as a matter of law.

## II. ANALYSIS

### A. Summary Judgment

■ Under *Fed.R.Civ.P.* 56(c), the Court will render summary judgment if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. The burden is on the moving party to conclusively show that no genuine issue of material fact exists, *Lansing Dairy, Inc. v. Espy,* 39 F.3d 1339, 1347 (6th Cir. 1994); *Kentucky Div., Horsemen's Benev. & Prot. Assoc., Inc. v. Turfway Park Racing Assoc., Inc.,* 20 F.3d 1406, 1411 (6th Cir. 1994), and the Court must view the facts and all inferences drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Oakland Gin Co., Inc. v. Marlow,* 44 F.3d 426, 429 (6th Cir. 1995); *City Management Corp. v. U.S. Chemical Co., Inc.,* 43 F.3d 244, 250 (6th Cir.1994).

■ Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. The nonmoving party may not rest on its

pleadings but must come forward with some significant probative evidence to support its claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Lansing Dairy,* 39 F.3d at 1347; *Horsemen's Benev.,* 20 F.3d at 1411. If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552.

■ The Court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question but does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *60 Ivy Street Corp. v. Alexander,* 822 F.2d 1432, 1435–36 (6th Cir. 1987). The standard for summary judgment mirrors the standard for directed verdict. The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52, 106 S.Ct. at 2512. There must be some probative evidence from which the jury could reasonably find for the nonmoving party. If the Court concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Id.; Lansing Dairy,* 39 F.3d at 1347; *Horsemen's Benev.,* 20 F.3d at 1411.

**B. RICO Claim**

■ In order to support a claim under § 1962(c) of RICO, a plaintiff must establish (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985).

**1. Marriage As An Enterprise**

■ Defendants, in their motion for summary judgment, argue a marriage is not a legal entity and, therefore, it is not an enterprise under the RICO statute. However, an "enterprise" under RICO may also be an "association in fact." *U.S. v. Turkette,* 452 U.S. 576, 581, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981). Proof of an "association in fact" requires evidence of the existence of "a group of persons associated together for a common purpose of engaging in a course of conduct." *Turkette* at 583, 101 S.Ct. at 2528. RICO includes both legitimate and illegitimate enterprises. *Turkette* at 593, 101 S.Ct. at 2533. The majority of courts have adopted this more liberal interpretation of the RICO statute as presented by the United States Supreme Court in *Turkette.*

■ In addition, for an association to be an "enterprise" under the RICO statute, it is not necessary for the enterprise itself to have a financial purpose. RICO, however, applies to cases in which the enterprise or the predicate acts have a financial purpose. *United States v. Bagaric,* 706 F.2d 42, 56 (2d Cir.1983). Even though a financial purpose is not required in order to establish an "enterprise," it has been held a marriage could have a financial dimension for purposes of RICO. *von Bulow by Auersperg v. von Bulow,* 634 F.Supp. 1284, 1306 (S.D.N.Y.1986).

Both parties admit that the defendants in this case are married. Marriage as an institution commits two individuals to maintaining their welfare as a unit. To attain this goal, a husband and wife share in certain responsibilities, some of which they may even be legally obligated to fulfill. One spouse can be obligated to pay the debts of the other; spouses also are entitled to certain benefits procured by the other spouse.

■ Consequently, with the allegations present in this case, the Court finds that a marriage can be an "enterprise" under RICO. In a marriage, a man and a woman are associated together for the common purpose of engaging in a course of conduct necessary to preserve their welfare as a marital unit.

**a. Distinctness**

■ RICO has a distinctness requirement. Hence, for purposes of liability under RICO, the "enterprise" must be distinct from the person conducting or participating in the affairs of the enterprise. *Davis v. Mutual*

*Life Ins. Co. of New York,* 6 F.3d 367, 378 (6th Cir.1993). Defendant argues that without Dennie Townson or Glenda Townson there would be no marriage; therefore, defendants cannot be considered distinct from the enterprise. Defendants cite *Davis v. Mutual Life Ins. Co. of New York* in support of their contention.

In *Davis,* Donald Fletcher, an insurance agent who owned Fletcher Insurance Agency, sold insurance policies for Mutual Life Insurance Company of New York ("MONY"). Fletcher used a fraudulent tax scheme to sell these policies. When the scheme unravelled, the plaintiffs, some of the investors in Fletcher's plan, sued Fletcher, his insurance agency ("FIA"), MONY, and another insurance company under RICO. MONY, as its defense, maintained it could not be held liable for participating in the affairs of FIA because FIA was simply an association of MONY agents. *Davis* at 377. To hold it liable, MONY contended, would violate the distinctness requirement under RICO.

The Sixth Circuit held a jury could reasonably conclude that FIA was a distinct entity from the evidence presented. However, more important to the analysis of the case at hand is this statement made by the Sixth Circuit in *Davis:*

> Second, and more important, even if the relevant inquiry were into the relationship between Fletcher and FIA, the finding of RICO liability could stand, for RICO contains no requirement that the person be removed from the enterprise. Although, as discussed above, RICO forbids the imposition of liability where the enterprise is nothing more than a subdivision or a part of the person, the requirement does not run the other way. Indeed, RICO requires that the person be employed by or associated with the enterprise. *Cf. McCullough v. Suter,* 757 F.2d 142 (7th Cir.1985) (holding that a sole proprietor, as the person, may associate with the business, as the enterprise, as long as there are other employees.)

*Davis* at 378 (emphasis in original).

By no means is the marriage a subdivision of either Mr. or Mrs. Townson. A marriage requires the association and commitment of two individuals.

The defendants also cite *von Bulow by Auersperg v. von Bulow,* 634 F.Supp. 1284 (S.D.N.Y.1986), for the proposition that a marriage is not an enterprise because of a lack of distinctness between the culpable person and the enterprise. The court in *von Bulow* held:

> While it appears that a marriage could have a financial dimension under RICO, the Court need not address this argument because Mr. von Bulow cannot be both the culpable 'person' under RICO and one half of the victimized marriage 'enterprise.'

*von Bulow* at 1306.

On its face, this statement made by the *von Bulow* court suggests a marriage is not an enterprise under RICO. However, the court went on to explain its holding by saying,

> It would stretch the elastic RICO statute too far to hold [Mr. von Bulow] could be one-half the couple-enterprise *and* the subverter of that enterprise. Accordingly, the allegation of Mr. and Mrs. von Bulow as a RICO enterprise is dismissed.

*von Bulow* at 1306 (emphasis in original).

Hence, the court in *von Bulow* found that the marriage between Mr. and Mrs. von Bulow was not an enterprise because of the lack of an "association" between the husband and wife. Mr. von Bulow was charged with attempting to murder his wife in order to obtain her assets. As stated earlier, an association in fact is a group of persons associated together for a common purpose of engaging in a course of conduct.

In the case at bar, there is no evidence of either Mr. or Mrs. Townson acting in any way other than in harmony with one another regarding the alleged insurance fraud. Therefore, an "enterprise" has been adequately alleged regarding the distinctness requirement.

### 2. *Conduct or Participate in the Conduct of the Enterprise's Affairs*

Both plaintiff and defendants cite *Reves v. Ernst & Young,* 507 U.S. 170, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993), to sup-

port their respective arguments concerning this element of a RICO claim. The U.S. Supreme Court in *Reves* said:

> Once we understand the word 'conduct' to require some degree of direction and the word 'participate' to require some part in that direction, the meaning of 1962(c) comes into focus. In order to 'participate, directly or indirectly, in the conduct of such enterprise's affairs,' one must have some part in directing those affairs. Of course, the word 'participate' makes clear that RICO liability is not limited to those with primary responsibility for the enterprise's affairs, just as the phrase 'directly or indirectly' makes clear that RICO liability is not limited to those with a formal position in the enterprise, but *some* part in directing the enterprise's affairs is required.

*Reves* at 179, 113 S.Ct. at 1170 (emphasis in original). From the Supreme Court's reasoning, it is apparent that to meet the "conduct" requirement of a RICO claim, the culpable persons must play some part in directing the enterprise's affairs.

The nature of the institution of marriage requires both parties to play at least some part in directing the affairs of that union, *i.e.* living arrangements, what debts to incur, etc. Consequently, in the absence of evidence suggesting Mr. or Mrs. Townson is the sole decisionmaker concerning the fulfillment of the responsibilities brought about as a result of their marriage, the Court finds sufficient support for this element of the RICO claim to survive.

### 3. *Through a Pattern of Racketeering Activity*

 An association in fact enterprise is an entity separate and apart from the pattern of racketeering in which it engages. *U.S. v. Turkette* at 583, 101 S.Ct. at 2528. Therefore, under this element of a RICO claim, a plaintiff must allege that the acts are connected to the enterprise. *U.S. v. Qaoud*, 777 F.2d 1105, 1116 (6th Cir.1985). Hence, to satisfy this requirement of a RICO claim, there must be evidence "that the facilities and services of the enterprise were regularly and repeatedly utilized to make possible the racketeering activity." *U.S. v. Carter*, 721 F.2d 1514, 1527 (11th Cir.), *cert. denied*, 469 U.S. 819, 105 S.Ct. 89, 83 L.Ed.2d 36 (1984).

The complaint in this case sufficiently alleges the defendants' use of the marital home and assets to engage in the supposed wire and mail fraud to victimize the plaintiff, as well as other insurance companies. Accordingly, there is a nexus between the marriage as an enterprise and the alleged pattern of racketeering conducted by the defendants.

### C. *Common Law Fraud Claim*

 Defendants contend they are entitled to summary judgment on this claim because of the plaintiff's failure to rely on any statement or representation made by the defendants. Defendants claim the deposition testimony of Mr. Hanrahan, a claims adjuster for plaintiff, suggests the plaintiff's lack of reliance on the representations made by defendants.

The Court does not find the defendants' argument persuasive. Although the deposition testimony of Mr. Hanrahan may indicate there was an element of disbelief regarding the defendants' insurance claim, his deposition also provides evidence that the investigation of claims is a normal part of the plaintiff's business procedure. Mr. Hanrahan's deposition also indicates his lack of authority in making any sort of final decision about the defendants' claim. Following standard procedures in processing claims, without more, does not provide the Court with a basis upon which to grant summary judgment. *See, McConkey v. Continental Ins. Co.*, 713 S.W.2d 901 (Tenn.Ct.App.1984) (where court did not preclude insurance company's claim of fraud against plaintiffs because insurance adjuster inspected the plaintiff's residence after a fire); *Tennessee Hospital Service Ass'n v. Strang*, 49 Tenn.App. 263, 354 S.W.2d 488 (1961) (where, in an action brought by insurer to recover amount it paid insured based on false certificates of operation, the court considered whether insurer lost right to rely upon certificates of operation signed by two physicians by failing to take steps to detect fraud when circumstances were present, which physicians argued should have put insurer upon inquiry,

including conducting an independent investigation of those circumstances). In addition, the record indicates the plaintiff has spent a significant sum of money in investigating the defendants' insurance claim. Consequently, the defendants' motion for summary judgment as to this claim will also be **DENIED**.

### III. *CONCLUSION*

In conclusion, the summary judgment motions of defendants will be **DENIED**.

An Order will enter.