**LAWHORN & ASSOCIATES, INC., Plaintiffs,**

v.

**PATRIOT GENERAL INSURANCE CO., Dairyland Insurance Co., and Sentry Family of Insurance Cos., Defendants.**

**No. 1:94–CV–509.**

United States District Court, E.D. Tennessee.

Feb. 8, 1996.

---

F. Scott LeRoy, Spears, Moore, Rebman & Williams, Chattanooga, TN, for plaintiff.

Shelby R. Grubbs and Marcia Meredith Eason, Miller & Martin, Chattanooga, TN, for defendants.

## MEMORANDUM

COLLIER, District Judge.

Before the Court is the Motion for Summary Judgment filed by Defendants (Court File No. 16). Plaintiff Lawhorn & Associates, Incorporated ("Associates") filed a Response (Court File No. 20), to which Defendants filed a Reply (Court File No. 21). Defendants argue the controlling issue is whether they breached their insurance agency agreements with Associates and, if not, then Associates' additional claims necessarily fail (See Court File No. 19, pp. 1–2; Court File No. 21, pp. 1–2). Associates essentially contends Defendants breached a general "duty of good faith and fair dealing" in the performance of the agency contracts (See generally Court File No. 1, attached Complaint; Court File No. 20). For the following reasons, the Court will **GRANT** the

motion for summary judgment filed by Defendants.

## I. FACTS

The relevant facts are largely undisputed (See Court File No. 20, Response p. 5). Associates, an insurance agency licensed in Tennessee and Georgia, primarily sells "nonstandard" automobile insurance policies, which provide insurance to high risk drivers. Associates entered into an agency agreement with Defendant Dairyland Insurance Company ("Dairyland") in August 1987 and with Defendant Patriot General Insurance Company ("Patriot") in March 1993. In December 1992, Dairyland notified Associates of a reduction of the commission percentage rates paid to agents in Georgia effective March 1993. This reduction applied to all agents in Georgia. Associates objected to the commission reduction and ultimately demanded arbitration pursuant to the terms of the agency contract (See Court File No. 17, Cashman Aff., Exh. C "agency agreement"). Both parties state the arbitration concluded in January 1994 (Court File No. 1, attached Complaint p. 3; Court File No. 19, p. 3).[1]

Before arbitration of the commission issue began in December 1993, Defendants terminated their agency agreements with Associates. Associates complains of Defendants' "wrongful and tortious termination of plaintiff contracts," that Defendants "unlawfully tortiously and maliciously breached their contracts with the plaintiff due to plaintiff's refusal to willingly accept Dairyland's previous attempt to cut the rate of plaintiff's commissions," and, in the alternative, that Defendants "breached their contracts with plaintiff in violation of the common law of Tennessee" (Court File No. 1, attached Complaint p. 3). Other than to allege it was wrongfully terminated, Associates does not specify a provision of the agency agreement breached by Defendants.[2] The Complaint does argue Defen-

---

1. The Court notes Associates' Complaint emphasizes Dairyland's conduct during the period relating to the reduction in commission percentages. The Complaint indicates Dairyland "attempted to force plaintiff to execute another Dairyland contract ... which would have allowed Dairyland to stop paying commissions on all policies previously sold by plaintiff for Dairyland" and prompted Associates to become a general agency for Patriot. Associates argues

Patriot's higher premiums caused Associates to lose business (Court File No. 1, attached Complaint pp. 2–3). Yet, other than these general references, the Complaint does not specify provisions of the agency agreement pertaining to the commissions breached by Defendants.

2. Defendants cite the following relevant deposition testimony:

dant Sentry Family of Insurance Companies ("Sentry") "procured the breach of contracts" Associates had with Dairyland and Patriot and all Defendants "owed a duty of good faith and fair dealing in their contractual relationships which the defendants have willfully and knowingly breached" (*Id.* at pp. 3–4).

In support of their claim of Defendants' "lack of good faith and fair dealing," Associates' Response provides excerpts from deposition testimony (*See* Court File No. 20, pp. 5–7). Generally, Associates argues Defendants terminated the agency agreements because Associates was the only agency who chose to arbitrate the commission issue. Associates points to the timing of the termination; Defendants' failure to discuss the possibility of termination with James R. and Charlotte Lawhorn, Associates' owners; a failure to discuss termination with and gather information from insurance company field representatives; "argumentative" discussions with Associates about the commission changes; a lack of a good relationship with Associates; an otherwise favorable performance by Associates; and reasons unused in other terminations for the termination of Associates' contracts.

The agency agreement between Dairyland and Associates contained the following provision:

> This agreement may be terminated with or without cause by either party upon (30) thirty days written notice. The day the notice is deposited in the United States mail addressed to the other party's last known address, or if the mail is not used, the day it is delivered to the party, shall be the first day of the thirty-day period.

(Court File No. 17, Cashman Aff. Ex. C). The agency agreement between Patriot and Associates contained the following provision:

> This Agreement may be terminated by either party upon thirty days written notice, or longer as the law requires. The

> A: I don't think Dairyland has a right to cancel this in order to make me sign another contract.
> Q: Is there any language in the contract that you're basing that understanding on?

date the notice is mailed or hand delivered is the first day of the notice period.

(*Id.*, Cashman Aff. Ex. E). Defendants terminated Associates' agency agreements by letter dated 2 November 1993, to be effective 2 December 1993 (*Id.*, Cashman Aff. Ex. F).

## II. STANDARD OF REVIEW

 Under *Fed.R.Civ.P.* 56(c), the Court will render summary judgment if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. The burden is on the moving party to conclusively show that no genuine issue of material fact exists, *Lansing Dairy, Inc. v. Espy,* 39 F.3d 1339, 1347 (6th Cir.1994); *Kentucky Div., Horsemen's Benev. & Prot. Assoc., Inc. v. Turfway Park Racing Assoc., Inc.,* 20 F.3d 1406, 1411 (6th Cir.1994), and the Court must view the facts and all inferences drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Oakland Gin Co., Inc. v. Marlow,* 44 F.3d 426, 429 (6th Cir. 1995); *City Management Corp. v. U.S. Chemical Co., Inc.,* 43 F.3d 244, 250 (6th Cir.1994). Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. The nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Lansing Dairy,* 39 F.3d at 1347; *Horsemen's Benev.,* 20 F.3d at 1411. If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53.

 The Court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question, but

> A: *It's the lack of language in that contract I'm basing that upon.*
> Court File No. 19, p. 12, *citing* James R. Lawhorn Depo. p. 39 (emphasis added).

542

does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435–36 (6th Cir.1987). The standard for summary judgment mirrors the standard for directed verdict. The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. at 2511–12. There must be some probative evidence from which the jury could reasonably find for the nonmoving party. If the Court concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Id.; Lansing Dairy*, 39 F.3d at 1347; *Horsemen's Benev.*, 20 F.3d at 1411.

### III. ANALYSIS

■ The parties agree Tennessee law controls the outcome of this case (*See* Court File No. 19, p. 4; Court File No. 20, p. 8). Under Tennessee law, courts interpret and enforce contracts as written. *See Tenn.Code Ann.* § 47–50–112(a) (1995) ("All contracts ... shall be prima facie evidence that the contract contains the true intention of the parties[ ] and shall be enforced as written."); *St. Paul Surplus Lines Ins. Co. v. Bishops Gate Ins. Co.*, 725 S.W.2d 948, 951 (Tenn.Ct.App. 1986). "The cardinal rule of construction of written instruments is that the intention of the parties as ascertained from the language of the instrument controls." *St. Paul Surplus*, 725 S.W.2d at 951. "The rights and obligations of contracting parties are governed by their written agreements." *Hillsboro Plaza Enters. v. Moon*, 860 S.W.2d 45, 47 (Tenn.Ct.App.1993). To find whether breaches of contract occurred, then, the Court must determine if the parties performed according to the contracts' terms.

■ Courts hold that contracts having no definite term of duration are terminable at will. *See Whittaker v. Care–More, Inc.*, 621 S.W.2d 395, 396 (Tenn.Ct.App.1981) (noting

"a contract for employment for an indefinite term is a contract at will and can be terminated by either party at any time without cause") (citations omitted); *First Flight Assoc., Inc. v. Professional Golf Co.*, 527 F.2d 931, 935 (6th Cir.1975) (noting "[c]ontracts silent on time of termination are generally terminable at will by either party with reasonable notice") (citation omitted).

■ Insurance agency agreements may be terminable at will. *See Hance v. United Family Life Ins. Co.*, 725 S.W.2d 680, 681 (Tenn.Ct.App.1986) (finding insurance agent to be an employee-at-will under contract terms stating, "Either party may terminate this Agreement by notice in writing mailed to last known address of either party"); *Creech v. Economy Fire and Casualty Co.*, No. 1064 Knox Circuit, 1986 WL 11802, at pp. *2–3 (Tenn.Ct.App. Oct. 24, 1986) (finding insurance agent to be an employee-at-will under contract terms stating, "This agreement may be terminated: ... (2) By either party upon 90 days' written notice to the other"). Both *Hance* and *Creech* quoted *Clanton v. Cain–Sloan Co.*, 677 S.W.2d 441, 443 (Tenn.1984) (citations omitted), which stated: "Under long-established Tennessee law, an employee-at-will can be discharged without breach of contract for good cause, bad cause or no cause at all."

■ The Court finds both agency agreements at issue were terminable at will. The agency agreement between Dairyland and Associates contained the following provision:

This agreement may be terminated with or without cause by either party upon (30) thirty days written notice. The day the notice is deposited in the United States mail addressed to the other party's last known address, or if the mail is not used, the day it is delivered to the party, shall be the first day of the thirty-day period.

(Court File No. 17, Cashman Aff. Ex. C). The agency agreement between Patriot and Associates contained the following provision:

This Agreement may be terminated by either party upon thirty days written notice, or longer as the law requires. The date the notice is mailed or hand delivered is the first day of the notice period.

(*Id.*, Cashman Aff. Ex. E). Both of these contracts use sufficiently similar language to those contracts cited in *Hance* and *Creech* to warrant their description as terminable at will.[3] The pleadings filed with the Court show Defendants satisfied the termination provisions of the agency agreements: They sent Associates a letter giving notice of the termination of the agency agreements at the conclusion of a thirty-day period. Absent a showing of something unlawful about Defendants' termination of the contracts, the terminations must stand as valid.

Associates contends a general obligation of good faith and fair dealing mandates the terminations be found wrongful. "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement." *Winfree v. Educators Credit Union*, 900 S.W.2d 285, 289 (Tenn.Ct.App.1995); *TSC Industries, Inc. v. Tomlin*, 743 S.W.2d 169, 173 (Tenn.Ct.App. 1987). However, "[w]hat this duty consists of ... depends upon the individual contract in each case. In construing contracts, courts look to the language of the instrument and to the intention of the parties...." *TSC Industries*, 743 S.W.2d at 173; *see also Bank of Crockett v. Cullipher*, 752 S.W.2d 84, 91–2 (Tenn.Ct.App.1988) (noting the implied duty of good faith and care was not breached by a party performing as "specifically allowed" by the contract). The implied duty of good faith and fair dealing, though, cannot supply "essential terms of a contract on which the minds of the parties have not met." *Winfree*, 900 S.W.2d at 289.

Lastly, "good faith or the lack of it may be an element or circumstance of recognized torts, or breaches of contracts, but ... [not], standing alone, an actionable tort." *Solomon v. First American Nat. Bank*, 774 S.W.2d 935, 945 (Tenn.Ct.App.1989); *Demontbreun v. First Cumberland Bank*, No. 01A019411CH00550, 1995 WL 681191, at p. *2 (Tenn.Ct.App. Nov. 17, 1995) (citing *Solomon* ); *see also Shelby v. Delta Air Lines, Inc.*, 842 F.Supp. 999, 1014 (M.D.Tenn.1993)

(opining that the Tennessee Supreme Court "will conclude that at-will employment contracts will not be encumbered with an implied covenant of good faith and fair dealing").

The Court finds Defendants did not breach a duty of good faith and fair dealing. For there to be a breach of such a duty, Associates would have to point to specific contractual provisions violated by Defendants. Associates did not do so. Rather, Defendants demonstrated they adhered to the bargained-for terms of the terminable at will agency agreements. Defendants provided Associates with thirty days written notice of the termination of the contracts. It is not the province of the Court to review the prudence or judgment of Defendants' decision. Because the Court holds Defendants did not breach the agency agreements nor a duty of good faith and fair dealing, the Court finds it unnecessary to address Associates' additional claims, all of which depended upon a finding of a breach of contract.[4]

The Court finds Associates failed to meet its burden under the summary judgment standard by showing the existence of a genuine issue of material fact. Accordingly, the Court will **GRANT** the motion for summary judgment filed by Defendants (Court File No. 16).

---

3. The Court notes Defendants' citation of deposition testimony from James R. Lawhorn and his understanding of the language of the contracts (*See* Court File No. 19, pp. 11–13).

4. For there to be an action for inducement to breach a contract, a plaintiff must show a breach of contract. *See TSC Industries*, 743 S.W.2d at 173 (listing elements of the claim).